**[Cite as *State v. Chafin*, 2017-Ohio-7622.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA3769 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| ELSWORTH CHAFIN, III, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 09/12/17** |

_____
APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, Portsmouth, Ohio, for Appellee.
_____

McFarland, J.

**{¶1}** Elsworth Chafin appeals from his convictions on multiple felony counts of trafficking in drugs, possession of drugs, receiving stolen property and possession of criminal tools, after a two-day jury trial in the Scioto County Court of Common Pleas. On appeal, Appellant contends that 1) his convictions for receiving stolen property and possession and trafficking in drugs (heroin) were against the manifest weight and sufficiency of the evidence; 2) the trial court committed reversible error when it failed to exclude his admissions from evidence after his right to counsel was violated; 3) the trial court committed plain error in allowing testimony regarding his

other bad acts; and 4) cumulative errors committed during his trial deprived him of a fair trial and require a reversal of his convictions.

{¶2} Because we find no reversible, plain or cumulative error in the trial court's admission and exclusion of evidence in the trial of this matter, and because we have determined that Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, we reject the arguments raised under all four of Appellant's assignments of error. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶3} On May 26, 2016, Appellant was indicted on twenty felony counts, which included three counts of trafficking in heroin, three counts of possession of heroin, one count of failure to comply with an order or signal of a police officer, one count of endangering children, ten counts of receiving stolen property (nine four-wheelers and a firearm), one count of possessing criminal tools (digital scales), and one count of having weapons while under a disability. A review of the record indicates these charges stemmed from three separate incidents which included a controlled drug buy with the use of a confidential informant, a traffic stop which resulted in heroin being found on Appellant's person, and a probation-led search of

Appellant's home which resulted in the discovery of a large amount of heroin located in a safe in Appellant's master bedroom, along with drug paraphernalia including baggies, digital scales and Mannitol. The search also led to the discovery of several stolen four-wheelers, some of which were parked right outside of Appellant's house, and some of which were found on a hill by Appellant's house that had a path from Appellant's home leading to the location of the four-wheelers.

{¶4} Appellant denied the charges and the matter proceeded to a jury trial. Just prior to trial, the State dismissed count twenty (having weapons while under a disability). At trial, the State presented several witnesses, including the individual owners of all of the recovered four-wheelers, as well as Deputy James Keaton, Detectives Adam Giles, Matt Spender, Lee Bower and Jodi Conkel, Sergeant John Koch, Chief Probation Officer Eric Flannery, Captain John Murphy, confidential informant Joshua Conschafsky, and forensic scientists Ashley Owen and Stanton Wheasler from the Ohio Bureau of Criminal Identification & Investigation (BCI). The pertinent witness testimony will be discussed below. Appellant presented no witnesses or evidence on his own behalf.

{¶5} Some of the pertinent trial testimony is set forth as follows, and additional testimony will be discussed as needed in our analysis of

Appellant's arguments.  Sergeant Koch testified he works by special assignment on the drug task force and had been investigating an individual referred to as "Booter."  He testified that he received a call from Detective Jodi Conkel on April 1, 2016 in reference to an individual named "Booter" who lived on Slab Run in West Portsmouth, Ohio, who had been receiving a lot of stolen four-wheelers.  Koch informed Conkel they were attempting a controlled buy with Booter later in the day and they could work together to try to determine Booter's real identity and where he lived.  Booter was eventually identified as Appellant, Elsworth Chafin.  Koch further testified that he arranged and participated in a controlled buy between Appellant and a confidential informant, Joshua Conschafsky.  Koch testified the confidential informant was searched prior to the buy, was provided with "recorded money" and a recording device, and that a controlled buy was arranged to take place in the Burger King parking lot.  Koch testified that after the transaction, he and Detective Giles met the confidential informant at a predetermined location and collected heroin purchased from Appellant.  The record reflects that a video of the controlled buy was played for the jury at that point.  The confidential informant also testified at trial.

{¶6} Sergeant Koch further testified that after the controlled buy was completed, he notified Detective Conkel, who was also working with the

probation department. He explained Conkel later contacted him and advised of the number of four-wheelers that had been found, which prompted Koch, Detective Giles and Detective Bowers to respond to the residence as well. He testified that just after he arrived at Appellant's residence, he was contacted by Deputy Keaton, who advised he had stopped Appellant on a motorcycle and that $345.00 in cash, a cell phone, and a brown substance/powder had been seized from Appellant. Koch testified that it was later determined that $90.00 of the $345.00 recovered from Appellant consisted of the marked money from the controlled buy.

{¶7} Detective Koch testified that he spoke with Appellant's girlfriend, Tiffany Hatfield, when he arrived at Appellant's house and informed her he believed illegal drugs were inside the residence. He testified that Hatfield led him to an electronic safe in the closet of the master bedroom where, after her second attempt to open it, he found a bag of heroin. When asked if there were any other drug-related items in the room, Hatfield pointed to a set of digital scales in a chest of drawers. Koch testified an empty bottle of Mannitol was also found. He explained during his testimony that digital scales are a very common tool used by drug traffickers to "weigh their dope" and that Mannitol is a substance used as a cutting agent that is added to drugs for more volume in order to make more

money. Koch also found an open box of sandwich baggies in the room, which he testified were commonly used to package drugs.

{¶8} Chief Probation Officer Eric Flannery testified that he was contacted by Detective Conkel on April 1, 2016, who stated that she had information that a probationer (Appellant) was involved with several stolen four-wheelers and had them at his residence. Flannery confirmed Appellant's address and took several of his officers and went to Appellant's residence to look around. Flannery testified that when he arrived at Appellant's residence Appellant's girlfriend was there and let him in to conduct a search. He testified at that point he called Detectives Jodi Conkel and Matt Spencer and asked them to respond, as he found several four-wheelers around Appellant's house and up on a hill.

{¶9} Detective Jodi Conkel also testified at trial. She testified that she had been working on several cases involving stolen four-wheelers and that the name "Booter" kept coming up as being involved. She testified regarding her cooperation with Detective Koch, who kept her informed on the status of the controlled buy. Once she was advised the buy had been completed she called probation. She testified that when Eric Flannery arrived at Appellant's house, he called her to come over because he found four-wheelers. She testified that when she arrived at Appellant's house she

saw four-wheelers in front of the house and a Can-Am on the side, as well as four-wheelers that went up the path beside the house.  Photographs of the scene taken by Conkel were shown to the jury at that point, and Conkel identified the various four-wheelers that were found as well as the owners they had been stolen from at trial.  Conkel also identified photos depicting various four-wheeler keys found in Appellant's bedroom.  Conkel further testified regarding a statement she obtained from Appellant, a recording of which was played for the jury, as well as statements made by Appellant during the fingerprinting process and on recorded jail phone calls, which will be discussed in detail below.

{¶10} Detective Lee Bower also testified at trial.  He testified that he responded to Appellant's residence to assist with the search and that his duties included trying to locate keys to four-wheelers.  He testified he found several four-wheeler keys, but that he also found some keys from tractor ignitions.  He testified that the search revealed that several of the four-wheelers had those types of ignitions (tractor ignitions).  He testified that one of these types of keys, which he found on a shelf in Appellant's house, matched up to a four-wheeler that was found on the hill.

{¶11} After hearing the evidence presented at trial, the jury acquitted Appellant on counts three, six and eighteen, which respectively charged with

failure to comply with an order or signal of a police officer, endangering children, and receiving stolen property (a firearm).  The jury found Appellant guilty of counts one, four and seven (trafficking in heroin), counts two, five and eight (possession of heroin), counts nine through seventeen (receiving stolen property, four-wheelers), and count nineteen, possessing criminal tools.  As a result, the trial court sentenced Appellant to an aggregate twenty-year term of imprisonment.  It is from the trial court's decision that Appellant now brings his timely appeal, assigning the following errors for our review.

## ASSIGNMENTS OF ERROR

"I.    APPELLANT'S CONVICTIONS FOR (A) RECEIVING STOLEN PROPERTY AND (B) POSSESSION/TRAFFICKING OF HEROIN WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II     THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO EXCLUDE THE ADMISSIONS OF THE APPELLANT FROM EVIDENCE AFTER APPELLANT'S RIGHT TO COUNSEL WAS VIOLATED.

III.   THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING TESTIMONY REGARDING OTHER BAD ACTS OF THE APPELLANT.

IV.   CUMULATIVE ERRORS COMMITTED DURING APPELLANT'S TRIAL DEPRIVED HIM OF A FAIR TRIAL."

## ASSIGNMENT OF ERROR II

{¶12} For ease of analysis, we address Appellant's assignments of error out of order, beginning with the second assignment of error. In his second assignment of error, Appellant contends that the trial court committed reversible error when it failed to exclude his admissions from evidence after his right to counsel was violated when Detective Conkel obtained incriminating statements from him while obtaining a fingerprint exemplar. Stated another way, Appellant argues that his Sixth Amendment right to counsel was violated when Detective Conkel went to the jail to obtain fingerprints from him without first contacting his attorney. The record reveals that while having his fingerprints taken, Appellant made incriminating statements that were voluntary and not in response to any questioning by Detective Conkel, indicating that he was guilty of four of the receiving stolen property charges.

{¶13} Appellant relies on *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926 (1967) in support of his argument. This Court recently discussed the holding in *Wade*, noting that in *Wade*, the Supreme Court of the United States held as follows:

> " 'a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the

accused his Sixth Amendment right to counsel and calls
in question the admissibility at trial of the in-court
identifications of the accused by witnesses who attended the
lineup.' " *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369,
¶ 45 (4th Dist.); citing *Gilbert v. California*, 388 U.S. 263, 272,
87 S.Ct. 1951 (1967), describing the holding in *Wade*.

In *Crocker*, the appellant objected at trial to the testimony of a police captain

that had obtained a post-indictment voice exemplar from him in order to

authenticate his voice on phone calls recorded at the jail. *Crocker* at ¶ 14.

On appeal, based upon the reasoning of *Wade*, we agreed that Crocker's

Sixth Amendment right to counsel had been violated as a result, however,

we ultimately determined that the police captain's post-indictment contact

with Crocker in the absence of counsel was harmless beyond a reasonable

doubt. *Id*. at ¶ 48.

{¶14} Appellant has provided this Court with no authority that

obtaining a fingerprint exemplar from an accused, post-indictment and in the

absence of counsel, violates the accused's Sixth Amendment right to

counsel.  Nonetheless, Appellant asks this Court to apply the reasoning of

*Wade* and *Crocker* to find that it does.  However, we find that Appellant has

not properly preserved this issue for purposes of appeal.

{¶15} The record reveals that here, Appellant did not file a pretrial

motion to suppress the statements obtained during the fingerprinting process,

which he argues was an improper procedure in and of itself that violated his

Sixth Amendment right to counsel. Further, although Appellant did object to the admission of the statements at trial, he did not raise the objection based upon constitutional grounds.[1] While it does not appear that Crocker filed a motion to suppress, he did object to the introduction of the evidence at trial.

{¶16} The admission or exclusion of evidence generally rests within the trial court's sound discretion. *State v. Green*, 184 Ohio App.3d 406, 2009–Ohio–5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). Thus, absent a clear showing of an abuse of discretion with attendant material prejudice to defendant, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence. *Id.* An abuse of discretion implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶17} Crim.R. 12 provides in pertinent part as follows:

"(C) Pretrial Motions. Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
* * *
(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it

---

[1] Defense counsel objected to Detective Conkel obtaining statements from a defendant who was represented by counsel, arguing that the prohibition against lawyers speaking directly with represented clients is prohibited. The trial court overruled the objection based upon the fact that Detective Conkel was a member of law enforcement, not an attorney, as well as the fact that Appellant's statements were voluntary, and not made in response to questioning by Detective Conkel.

> was illegally obtained. Such motions shall be filed in the trial court only.
>
> \* \* \*
>
> (H) Effect of Failure to Raise Defenses or Objections. Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court pursuant to division (D) of this rule, or prior to any extension of time made by the court, shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver."

Thus, pursuant to Crim.R. 12(H), a party's failure to raise defenses, objections, or requests that must be made prior to trial results in a waiver. *See State v. Brewer*, 4th Dist. Highland No. 95CA870, 1997 WL 82821, \*10 (Feb. 21, 1997) (referring to Crim.R. 12(G), which is now Crim.R. 12(H); citing *State v. Moody*, 55 Ohio St.2d 64, 377 N.E.2d 1008 (1978) (holding that the failure to move for the suppression of evidence based on a claim of an illegally obtained statement constitutes a waiver of that claim or error.) (internal citations omitted).

{¶18} Further, this Court has noted as follows with respect to the purpose of a motion to suppress:

> " 'A "motion to suppress" is defined as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation etc.), of U.S. Constitution." Black's Law Dictionary (6 Ed.1990) 1014. Thus, a motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule first

enunciated by the United States Supreme Court in *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and made applicable to the states in *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Further, this court has held that the exclusionary rule will not ordinarily be applied to suppress evidence which is the product of police conduct that violates a statute but falls short of a constitutional violation, unless specifically required by the legislature. *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 235, 416 N.E.2d 598, 600. * * *.' *State v. French* (1995), 72 Ohio St.3d 446, 449, 650 N.E.2d 887." *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 27.

Thus, exclusion of a statement improperly obtained in violation of the Sixth Amendment right to counsel is properly achieved through the filing of a pretrial motion to suppress.

{¶19} Here, Appellant's failure to file a motion to suppress and further failure to object on these specific grounds at trial results in a waiver and is fatal to his argument on appeal. *See State v. Harris*, 4th Dist. Adams No. 03CA760, 2003-Ohio-3476, ¶ 21 (the proper time to object to the admission of evidence is not after the trial court has rendered a verdict); *City of Logan v. McKinney*, 4th Dist. Hocking No. 95CA12, 1997 WL 79887, *2 (motions to suppress evidence on the grounds that it was illegally obtained must be filed prior to trial); *State v. King*, 4th Dist. Gallia No. 94CA9, 1994 WL 590434, *2 (failure to file proper motion to suppress is fatal to claim of error); *State v. Cross*, 4th Dist. Highland No. 805, 1993 WL 171602, *3 (May 19, 1993) (failure to file motion to suppress or object at trial results in

waiver); *State v. Bradley*, 4th Dist. Scioto No. 1583, 1987 WL 17303, *9 (Sept. 22, 1987) (failure to move prior to trial for suppression of certain inculpatory statements made by a defendant during his detention constitutes waiver of the defense or objection.). Accordingly, Appellant's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

{¶20} In his third assignment of error, Appellant contends that the trial court committed plain error in allowing the jury to hear testimony regarding his probation, which Appellant argues placed him under an "air of criminality" throughout his trial. Appellant concedes that he did not object to this testimony at trial and thus, asks this Court to review the argument for plain error. As set forth above, the admission or exclusion of evidence generally rests within the trial court's sound discretion. *State v. Green, supra,* at ¶ 14. However, because Appellant did not object to the admission of the probation officer's testimony at trial, we will review Appellant's argument under a "plain error" standard of review.

{¶21} Failure to object to an alleged error waives all but plain error. *State v. Keeley*, 4th Dist. Washington No. 11CA5, 2012–Ohio–3564, ¶ 28. Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage

of justice. *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010–Ohio–3286, 934 N.E.2d 920, ¶ 6; *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  To find plain error, the outcome of trial must clearly have been otherwise. *State v. McCausland*, 124 Ohio St.3d 8, 2009–Ohio–5933, 918 N.E.2d 507, ¶ 15; *State v. Braden*, 98 Ohio St.3d 354, 2003–Ohio–1325, 785 N.E.2d 439, ¶ 50.

{¶22} Appellant argues that his probation officer should not have been permitted to testify at trial because "his very identity as a probation officer constituted the introduction of other bad acts evidence, namely, that Appellant had been convicted of an unnamed crime."  Appellant claims that allowing his probation officer to testify violated Evid.R. 404(B) and R.C. 2945.59, which provide that evidence of other bad acts is not admissible to establish a defendant's bad character or criminal propensity.  Appellant argues that no exceptions to these evidentiary rules applied to allow the probation officer's testimony in this case.

{¶23} Evid.R. 404(B), provides as follows:

"(B) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if

the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

R.C. 2945.59, which governs proof of a defendant's motive, provides as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶24} Further, even if other bad acts evidence is deemed admissible under both Evid.R. 404(B) and R.C. 2945.59, "it must still pass the test set forth in Evid.R. 403, namely, that the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, or the danger of confusing or misleading the jury." *State v. Anderson*, 7th Dist. Mahoning No. 03MA252, 2006-Ohio-4618, ¶ 31; citing *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186.  Evid.R. 403, which governs exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay, provides as follows:

"(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by

the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

{¶25} Appellant primarily relies upon the reasoning of *State v. Anderson, supra,* in support of his argument. In *Anderson*, it was held that a probation officer's testimony violated the general rule against other bad acts evidence, where the State's overall purpose of having the probation officer testify "was to show that he was Appellant's probation officer, and that Appellant was subject to numerous conditions as part of his probation." *Id.* at ¶ 68. In reaching its decision, however, the *Anderson* court noted that the facts before it were distinguishable from the facts in *State v. Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298 (1999).

{¶26} In *Cowans*, the Supreme Court of Ohio held that a parole officer may testify in the guilt phase of trial without violating Evid.R. 404(B) if the parole officer's status as a parole officer is "inextricably linked" to the State's presentation of its case." *Anderson* at ¶ 73, describing the holding in *Cowans*. The *Anderson* court further noted that in *Cowans*, Cowan's status as a parolee was relevant because the parole officer searched his house and found property that had been stolen, and the reason the parole officer was able to search the house was because he was Cowan's parole

officer, unlike the case presently before it. *Id*. at ¶ 74. The *Cowans* court reasoned that without knowing the relationship between Cowans and the probation officer, the jury could not have understood why the probation officer was searching Cowan's home. *Cowans* at 78.

{¶27} We believe the facts presently before us are much more akin to the facts in *Cowans* than *Anderson.* We disagree with Appellant's contention that the State's purpose in having Appellant's probation officer testify at trial was to illustrate that he was on probation and had violated conditions of his probation. Instead, as argued by the State, the probation officer's testimony was inextricably linked to the State's presentation of its case. Here, Appellant's arrest occurred as a result of detectives working with the probation department to identify Appellant and search his home. It was the probation officer that ultimately identified Appellant, confirmed the location of his residence and led the search, by virtue of the fact that Appellant was subject to searches by the probation department.

{¶28} We further note that both Anderson and Cowans filed pretrial motions in limine to prevent introduction of the evidence of prior bad acts. Appellant herein did not, and did not object to the introduction of the probation officer testimony at trial. In light of our plain error standard, and also because we find the probation officer's testimony to be similar to

testimony approved by the Supreme Court of Ohio in *Cowans*, we find no error, let alone plain error, in the trial court's admission of the probation officer's testimony. Accordingly, Appellant's third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

{¶29} In his first assignment of error, Appellant contends that his convictions for receiving stolen property, as well as his convictions for possession and trafficking in drugs were against the manifest weight and sufficiency of the evidence. Appellant primarily argues, with respect to the receiving stolen property convictions, that he did not have reasonable cause to believe four four-wheelers found on his property were stolen, and that he had no knowledge that four additional four-wheelers found on a hill near his house were even there. As to the drug possession and trafficking convictions, Appellant argues that the State failed to demonstrate he had actual or constructive possession of the drugs found in the safe located at his home, and that the State failed to prove any hand-to-hand transaction during the controlled buy.

{¶30} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶31} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶32} "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.  But the weight and credibility of evidence are to be determined by the trier of

fact. *Kirkland* at ¶ 132. The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

Trafficking and Possession of Heroin

{¶33} On appeal, Appellant challenges four of his six drug convictions. Specifically, Appellant challenges his convictions on counts one and two, which are the trafficking and possession of heroin charges stemming from the controlled buy with the confidential informant. He also challenges his convictions on counts seven and eight, which are the trafficking and possession of heroin charges stemming from the discovery of heroin found in a safe in the master bedroom of his home after law enforcement searched his residence.

{¶34} As set forth above, Appellant was indicted on three counts of trafficking in heroin and three counts of possession of heroin. R.C. 2925.03 governs trafficking offenses and provides, in pertinent part, as follows:

"(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.
* * *

 (C) Whoever violates division (A) of this section is guilty of one of the following:
* * *

(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(6)(b), (c), (d), (e), (f), or (g) of this section, trafficking in heroin is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
* * *

(c) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds ten unit doses but is less than fifty unit doses or equals or exceeds one gram but is less than five grams, trafficking in heroin is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term for the offense. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the third degree, and there is a presumption for a prison term for the offense.
* * *

(e) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, trafficking in heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a

felony of the second degree. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."[2]

{¶35} R.C. 2925.11 governs possession offenses and provides, in

pertinent part, as follows:

"(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
* * *
(C) Whoever violates division (A) of this section is guilty of one of the following:
* * *
(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(6)(b), (c), (d), (e), or (f) of this section, possession of heroin is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
* * *
(c) If the amount of the drug involved equals or exceeds fifty unit doses but is less than one hundred unit doses or equals or exceeds five grams but is less than ten grams, possession of heroin is a felony of the third degree, and there is a presumption for a prison term for the offense.

(d) If the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or

---

[2] Each trafficking count involved a different subsection of the statute based upon the amount of heroin involved with each count. The amount of heroin involved as to each count is not at issue on appeal and will not be detailed.

equals or exceeds ten grams but is less than fifty grams, possession of heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."[3]

{¶36} As to counts one and two, the counts stemming from the controlled buy, Appellant simply argues that the video of the controlled buy did not reveal any hand-to-hand transaction of narcotics or money, and that another individual, Brandi Fitzpatrick, was present during the transaction. The State concedes that the video played for the jury does not show the moment Appellant hands the heroin to the confidential informant and in return receives the marked buy money. However, as argued by the State, the video does show Appellant sitting in the confidential informant's vehicle. Further, the confidential informant testified that he made a transaction with Appellant and then gave the heroin he bought from Appellant to narcotics officers. Additionally, ninety dollars of the marked buy money was recovered from Appellant's person later that day during a traffic stop. As set forth above, heroin was also discovered on Appellant's person during the traffic stop, but Appellant is not challenging those convictions on appeal. Moreover, as noted by the State, Appellant made statements to his girlfriend during a recorded jail telephone call that "they got the wired buy on me

---

[3] As with the trafficking counts, each possession count involved a different subsection of the statute based upon the amount of heroin involved with each count. The amount of heroin involved as to each count is not at issue on appeal and will not be detailed.

* * *."

**{¶37}** With respect to Appellant's argument that his convictions are against the manifest weight of the evidence because the video does not actually show him exchanging heroin for cash with the confidential informant and that another individual, Brandi Fitzpatrick, was present at the time, we note that:

> " '[D]irect evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying, and persuasive than direct evidence.' *State v. Grube*, 987 N.E.2d 287, 2013–Ohio–692, ¶ 30, quoting *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), citing *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 10, (1960), citing *Rogers v.[] Missouri Pacific RR Co*, 352 U.S. 500[,] 508, [] 77 S.Ct. 443, 449, fn.17, (1957). Even murder convictions and death sentences can rest solely on circumstantial evidence. *Grube, supra,* citing *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987); *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236, 1239 (1988).' " *State v. Adkins*, 4th Dist. Scioto No. 14CA3674, 2016-Ohio-7250, ¶ 15.

We also note in resolving conflicts of the evidence, the jury was in the best position to observe the witnesses, weigh their demeanor, and any gestures or voice inflections, and determine their credibility.  The jury was instructed as to the legal definitions of direct evidence, circumstantial evidence, and credibility.  The jury was instructed that as to the weight of the evidence, they were free to believe all, part or none of any witness's testimony.

{¶38} Based upon the record before us, we believe it was reasonable for the jury to conclude, based upon the reasonable inferences it was permitted to make, that even though hand-to-hand contact between Appellant and the confidential informant could not be seen on the video, Appellant did in fact sell heroin to the confidential informant. This inference is supported by the fact that marked buy money from the controlled buy, as well as additional heroin, was found on Appellant's person later that day. Further, the jury was free to believe all, part or none of the confidential informant's testimony, and it apparently found the testimony to be credible. This credibility determination was properly within the province of the jury and this Court will defer to that determination. Accordingly, we reject Appellant's argument that his convictions for counts one and two are against the manifest weight of the evidence.

{¶39} As to counts seven and eight, which involve the charges stemming from the heroin found in Appellant's safe, the only argument Appellant appears to raise is that the State failed to establish that he either actually or constructively possessed the heroin found in the safe because Appellant was not at home when it was discovered. Drug trafficking and possession offenses both involve an element of knowledge. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will

probably cause a certain result or will probably be of a certain nature.  A

person has knowledge of circumstances when he is aware that such

circumstances probably exist." R.C. 2901.22(B).  "[P]ossession" is defined

as "having control over a thing or substance, but may not be inferred solely

from mere access to the thing or substance through ownership or occupation

of the premises upon which the thing or substance is found." R.C.

2925.01(K).  "Possession may be actual or constructive." *State v. Moon,*

*supra,* at ¶ 19; citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98

(1989) ("[t]o constitute possession, it is sufficient that the defendant has

constructive possession").

{¶40} " 'Actual possession exists when the circumstances indicate

that an individual has or had an item within his immediate physical

possession.' " *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148,

895 N.E.2d 633, ¶ 13 (4th Dist.); quoting *State v. Fry*, 4th Dist. Jackson No.

03CA26, 2004-Ohio-5747, ¶ 39.  "Constructive possession exists when an

individual knowingly exercises dominion and control over an object, even

though that object may not be within his immediate physical possession."

*State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus;

*State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19.  For

constructive possession to exist, the State must show that the defendant was

conscious of the object's presence. *Hankerson* at 91; *Kingsland* at ¶ 13.

Both dominion and control, and whether a person was conscious of the

object's presence may be established through circumstantial evidence.

*Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive

possession of the same object." *Id.*

{¶41} "Although a defendant's mere proximity is in itself insufficient

to establish constructive possession, proximity to the object may constitute

some evidence of constructive possession. * * * Thus, presence in the

vicinity of contraband, coupled with another factor or factors probative of

dominion or control over the contraband, may establish constructive

possession." *Kingsland* at ¶ 13; *State v. Criswell*, 4th Dist. Scioto No.

13CA3588, 2014-Ohio-3941, ¶ 11.

{¶42} The following evidence supported the jury's conclusion that

Appellant had knowledge of and exercised dominion and control over the

drugs found in the safe. Upon searching a residence which Appellant had

informed the probation department was his home, law enforcement

discovered an amount of heroin exceeding ten grams but less than fifty

grams, in a safe in the closet of Appellant's master bedroom. Also found in

the bedroom were baggies and Mannitol. The State presented testimony at

trial that the baggies found were consistent with the baggies used in the

controlled buy earlier that day and also found in Appellant's pocket during the traffic stop. The State presented further evidence that digital scales containing Appellant's fingerprints were found. Finally, the record indicates that Mannitol is commonly used as a cutting agent for narcotics and that digital scales are used to weigh narcotics.

{¶43} Further, recorded jail telephone calls between Appellant and his girlfriend were played for the jury. Appellant states as follows during one of the calls in response to his girlfriend telling him that had she known heroin was in the safe, she would not have opened it for law enforcement during the search:

> "Exactly. That's what I said. You didn't know that she wanted to leave it there. I didn't tell you that she wanted to leave it there. I didn't tell you it was in there. I didn't tell you she left it there. I didn't tell you that I got seven grams from her. She was supposed to give me a thousand dollars on that bike and the dope."[4]

{¶44} Based on this evidence the jury could reasonably conclude that Appellant knew about the heroin in the safe and that he exercised dominion and control over the drugs. The evidence indicated Appellant constructively possessed the heroin found in the safe located in the master bedroom of his house, even though he was not home at the time, and that he additionally

---

[4] The "she" Appellant is referencing is Brandi Fitzpatrick, who was present with Appellant during the controlled buy.

possessed it in a quantity, along with other items found in Appellant's master bedroom such as baggies, Mannitol, and digital scales, that established not only drug possession, but drug trafficking. Contrary to his suggestion that the heroin belonged to Brandi Fitzpatrick and not him, Appellant's statements to his wife on recorded jail phone calls indicated he knew the heroin was in the safe. Further, even if the heroin was owned by Brandi Fitzpatrick, the evidence indicated he had knowledge of it and jointly possessed it with her.

{¶45} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that the trial court did not clearly lose its way and create such a manifest miscarriage of justice that we must reverse these drug convictions. Thus, these convictions are not against the manifest weight of the evidence. Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389, ¶ 27. Having already determined that Appellant's drug trafficking and possession convictions are not against the manifest weight of the evidence, we necessarily reject Appellant's additional claims that these convictions are not

supported by sufficient evidence.  Therefore, we overrule this portion of his

first assignment of error.

Receiving Stolen Property

{¶46} Appellant also contends that eight of his nine convictions for

receiving stolen property were not supported by sufficient evidence and

were against the manifest weight of the evidence.  R.C. 2913.51 prohibits

receiving stolen property and provides, in pertinent part, as follows:

> "(A) No person shall receive, retain, or dispose of property of
> another knowing or having reasonable cause to believe that the
> property has been obtained through commission of a theft
> offense.
> * * *
> (C) Whoever violates this section is guilty of receiving stolen
> property. Except as otherwise provided in this division or
> division (D) of this section, receiving stolen property is a
> misdemeanor of the first degree. If the value of the property
> involved is one thousand dollars or more and is less than seven
> thousand five hundred dollars, if the property involved is any of
> the property listed in section 2913.71 of the Revised Code,
> receiving stolen property is a felony of the fifth degree. If the
> property involved is a motor vehicle, as defined in section
> 4501.01 of the Revised Code, if the property involved is a
> dangerous drug, as defined in section 4729.01 of the Revised
> Code, if the value of the property involved is seven thousand
> five hundred dollars or more and is less than one hundred fifty
> thousand dollars, or if the property involved is a firearm or
> dangerous ordnance, as defined in section 2923.11 of the
> Revised Code, receiving stolen property is a felony of the
> fourth degree. If the value of the property involved is one
> hundred fifty thousand dollars or more, receiving stolen
> property is a felony of the third degree."

**{¶47}** Appellant first challenges his convictions of counts twelve, fourteen, fifteen and seventeen, which stem from law enforcement's discovery of four stolen four-wheelers atop a hill near Appellant's residence. Appellant argues that these four-wheelers were found a significant distance away from his house, and that the State failed to present any testimony or evidence that Appellant knew of or had access to these four-wheelers. Appellant further argues the State failed to provide any evidence which indicated Appellant was in possession of these four-wheelers at any time.

**{¶48}** Like the drug possession and trafficking offenses discussed above, the offense of receiving stolen property has a knowledge element. As we have already explained, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). As set forth above, direct evidence of a fact is not required. *State v. Adkins, supra,* at ¶ 15. As we reasoned in *State v. Woodruff,* 4th Dist. Ross No. 07CA2972, 2008-Ohio-967, ¶ 9, "[a]bsent an admission by a defendant, the state must rely on circumstantial evidence to satisfy the reasonable cause to believe element." Here, Appellant's argument that he had no knowledge that four stolen four-wheelers were on a hill behind his house fails due to the circumstantial evidence presented by the State at trial.

{¶49} Contrary to Appellant's argument that the four-wheelers on the hill were a significant distance from his house, and that the State failed to provide he had knowledge of, access to, or possession of the four-wheelers, the State presented evidence that there was a well-worn path that began only about fifty feet from Appellant's house, right beside Appellant's dog's house, which led directly to the four-wheelers on the hill. Photos of the area were introduced at trial and show a path leading from where the four-wheelers were parked on the hill to Appellant's driveway. Further, and most importantly, a key to one of these four four-wheelers was found inside Appellant's residence during a search of the house. The State was not required to prove actual possession, but rather constructive possession may suffice. *Woodruff* at ¶ 7. We believe the jury could reasonably conclude that if Appellant had knowledge of and constructive possession of one of the four-wheelers on the hill, he had knowledge of and possession of all of them.

{¶50} We likewise reject Appellant's argument that the State failed to prove he possessed these four-wheelers at any point, as the discovery of a key to one of the four-wheelers in Appellant's house constitutes circumstantial evidence that would allow the jury to infer otherwise. Additionally, the record reflects Appellant admitted to Detective Conkel that once he was explicitly told the four-wheelers were stolen, he did not buy any

more, but that he knew someone was going up on the hill.  While R.C. 2913.51(A) explicitly prohibits a person from receiving stolen property, it also prohibits a person from retaining it.  "Retain" is defined as "[t]o continue to hold, have, use, recognize, etc., and to keep." *State v. Steward*, 4th Dist. Washington No. 02CA43, 2003-Ohio- 4082, ¶ 10; Citing Black's Law Dictionary (5th Ed.).  Even if he was not the purchaser of some of the four-wheelers on the hill, we conclude Appellant's act of retaining the four-wheelers after he became aware they were stolen, and permitting someone else, if not himself, to keep them on the hill by his house constituted a violation of R.C. 2913.51(A) .

{¶51} Thus, accepting that Appellant either knew of or had reason to believe that the four wheelers were on top of the hill, based upon the fact that a path led directly from his house to the four-wheelers and a key to one of the four-wheelers was found in his house, the jury could permissively infer that Appellant had knowledge of and constructively possessed them and also had knowledge they were stolen, based upon the additional evidence introduced by the State indicating that the four-wheelers had been hot-wired.  Accordingly, we cannot conclude that Appellant's convictions on counts twelve, fourteen, fifteen and seventeen are against the manifest weight of the evidence.

{¶52} Our analysis, however, does not end here.  Appellant also challenges his convictions on counts nine, ten, thirteen and sixteen, which stem from law enforcement's discovery of four stolen four-wheelers right outside of Appellant's residence.  Appellant concedes he knew these four-wheelers were at his residence, but he contends the State failed to demonstrate he either knew or had reasonable cause to believe the four-wheelers were stolen.  Appellant contends the State's presentation of evidence as to the condition of the four-wheelers, including decals being painted over, and the price Appellant paid for the four-wheelers is not enough to satisfy knowledge element of the offense of receiving stolen property.

{¶53} Once again, we are reminded that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  As pointed out by the State, one of the four-wheelers discovered just outside of Appellant's house had been hot-wired and the other three had decals that had been painted over with spray paint.  In Appellant's interview with Detective Conkel that was played for the jury, Appellant stated that he bought all of the four-wheelers that were

sitting in his yard. Later in the interview Appellant's stated he had only purchased two of the four-wheelers, but that he "kind of figured" that the four-wheelers he purchased were stolen because of the good price ($300.00) and also because he knew that the seller could not have that many four-wheelers. Appellant further stated that he was simply holding one of the more expensive four-wheeler's (a Can-Am) for another person, but was also riding it, which is evidence that even if Appellant did not actually purchase the four-wheeler, he was retaining stolen property by holding it and riding it.

{¶54} Further, and importantly, we have already determined under Appellant's second assignment of error that voluntary statements he made to Detective Conkel while having his fingerprints taken were properly admitted at trial. Detective Conkel testified that when having his fingerprints taken, Appellant voluntarily stated "I'm only guilty of four of those." She testified he further stated "I'm not guilty of them other four. * * * I was just holding them for buddies and the other one was Brent's." Finally, recorded jail calls between Appellant and his girlfriend were played for the jury. In the first call Appellant can be heard telling his girlfriend that he bought two four-wheelers, but that they had keys to them and that he didn't ask and the seller did not say if they were stolen. In the second call Appellant can be heard telling his girlfriend that "only three of them [four-wheelers] was mine."

{¶55} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that the trial court did not clearly lose its way and create such a manifest miscarriage of justice that we must reverse these receiving stolen property convictions. Thus, these convictions are not against the manifest weight of the evidence. Moreover, and as we explained above, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction." *State v. Adkins, supra,* ¶ 27. Having already determined that Appellant's receiving stolen property convictions are not against the manifest weight of the evidence, we necessarily reject Appellant's additional claims that these convictions are not supported by sufficient evidence. Therefore, we also overrule this portion of his first assignment of error. Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR IV

{¶56} In his fourth and final assignment of error, Appellant contends that errors committed during his trial deprived him of a fair trial and require a reversal of his convictions. We disagree. As set forth above, we have found no merit to the errors Appellant alleges occurred at trial. If a

reviewing court finds no prior instances of error, then the cumulative error doctrine does not apply. *State v. Smith*, 2016-Ohio-5062, 70 N.E.3d 150, ¶ 65 (4th Dist.); quoting *State v. Jackson*, 4th Dist. Pickaway No. 11CA20, 2012-Ohio-6276, ¶ 52; quoting *State v. McKnight*, 4th Dist. Vinton No. 07CA665, 2008-Ohio-2435, ¶ 108.  As such, Appellant's fourth assignment of error is overruled.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Hoover, J.:   Concurs in Judgment and Opinion as to Assignments of Error I, III, and IV; Concurs in Judgment Only as to Assignment of Error II.

For the Court,

BY:    _____
       Matthew W. McFarland, Judge

**NOTICE TO COUNSEL:  Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**