**[Cite as *State v. Trego*, 2023-Ohio-1114.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

State of Ohio,                                     :          Case No.   22CA18

    Plaintiff-Appellee,                     :

                                         :          <u>DECISION AND</u>
v.                                                           :          <u>JUDGMENT ENTRY</u>

Kevin Trego,                                       :

    Defendant-Appellant.                 :          **RELEASED 3/30/2023**

_____
APPEARANCES:

Renee Severyn, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.
_____
Hess, J.

**{¶1}**   Kevin Trego appeals from a judgment of the Ross County Court of Common Pleas convicting him of aggravated possession of drugs. Trego presents three assignments of error asserting that the police conducted an improper inventory search in violation of his constitutional rights, that trial counsel was ineffective in failing to file a motion to suppress evidence obtained through the unconstitutional search, and that his conviction was against the manifest weight of the evidence. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}    In August 2021, the Ross County grand jury indicted Trego on one count of aggravated possession of drugs in violation of R.C. 2925.11, a fifth-degree felony.  Trego pleaded not guilty.  The matter proceeded to a jury trial in March 2022.

{¶3}    Officer Morgan Music of the Chillicothe Police Department testified that on September 21, 2020, at approximately 4:20 a.m., he initiated a traffic stop of a vehicle traveling northbound on Paint Street in Chillicothe with tags which had expired in December 2019.  Trego was the driver and had a passenger who was not identified at trial.  Trego immediately stopped the vehicle, and Officer Music did not see him make any furtive movements. The vehicle was registered to Joshua Wallace; however, Officer Music testified that Trego acknowledged ownership of the vehicle. Trego told Officer Music that he had just gotten the vehicle "from a brother of a * * * stepson or something" and "had been working on it."

{¶4}    Officer Music determined the vehicle had to be towed from the scene, so he had to remove the occupants from the vehicle and complete an inventory to document the contents of the vehicle.  After removing Trego from the vehicle, Officer Music searched him.  Officer Music testified that when he searches someone, "I pull them out, I ask them for consent to search person [sic].  Then I check their pockets make sure [sic] they don't have any drug paraphernalia and or weapons on them."  In one of Trego's pants pockets, Officer Music found a clear container with a crystal rock residue inside and asked Trego "if it was methamphetamine that was in it at one point."  Trego "said no it wasn't."  Officer Music searched the vehicle and testified that he believed he was leaning over the center console when he saw "a green pipe" which he knew "to be used to smoke

methamphetamine, beside the driver seat, next to the center console." He found a bag containing a "crystal rock substance" under the flap protecting the mirror on the sun visor above the driver's seat. Officer Music also found tools, "a bag full of * * * deodorants and things like that," and miscellaneous paperwork in the vehicle. He testified that the vehicle was not very clean and contained a "fair amount" of trash. He testified that none of the items in the vehicle were tested for indicia of ownership, like fingerprints, and there was nothing on the sun visor with Trego's name on it. He also acknowledged that he did not contact Wallace, check Wallace's criminal history, check BMV records for the vehicle, or put the VIN number on the inventory sheet even though he had testified the number "should be on" it.

{¶5} The state introduced into evidence photographs depicting the clear container with the crystal rock residue inside, the pipe, and the bag with the crystal rock substance inside. The state also introduced into evidence the crystal rock substance and presented evidence that testing by the Ohio Bureau of Criminal Investigation revealed it was 0.29 grams, plus or minus 0.04 grams, of a white crystalline material found to contain methamphetamine, a schedule II controlled substance. The residue and pipe were not tested for the presence of a controlled substance.

{¶6} Trego testified that on September 21, 2020, he was driving a White Acura which he was in the process of buying from Wallace, his stepfather's nephew's son. Trego could not recall when he first saw the vehicle. However, he testified that he inquired about buying it and inspected it. The battery was dead, and he had to "jump" the vehicle. The "exhaust was extremely loud," and the vehicle did not have a catalytic converter, so he "arranged to get parts to fix it so it wouldn't be so loud." He paid a "couple hundred

dollars" for the vehicle "a couple days" before the traffic stop. He worked on the vehicle "a couple of different times" but could not recall when, and he and Wallace were "working on getting the title notarized." At some point, Trego arranged to "come get the car" and did so at 4:00 a.m. the day of the traffic stop.

{¶7} Trego did not deny that the clear container was in his pocket but denied knowing the pipe and methamphetamine were in the Acura. He testified that prior to getting in the driver's seat the morning of the traffic stop, he had only gotten in the vehicle "to start it." When he first saw the vehicle, the interior was not perfectly clean and contained various objects "like empty pop bottles and cans stuff like that." When asked if it was fair to say there were half empty bottles of Mountain Dew in the vehicle during the traffic stop, Trego testified, "I would say yeah. I don't drink Mountain Dew, but I'd say there was [sic] empty bottles and stuff in the car, yes." Trego testified that he did not clean the vehicle. He initially testified that he was not sure whether he had any belongings in the vehicle other than the tools he was using to fix it, but he later testified the only things in the car that belonged to him were the tools. Trego admitted that he had struggled with a drug problem "over the years," but he testified that he had been in treatment for a little over six months and "clean" almost nine months. He testified that when he did use drugs, he did not "ride around with them" in his car but instead stored them and used them at home. He testified that he never used drugs in the Acura. When the prosecutor asked Trego if he had four theft convictions, Trego testified he had more than four.

{¶8} The jury found Trego guilty. The trial court sentenced him to three years of community control sanctions and notified him that if he violated the conditions of the

sanctions, the court could impose a longer time under the same sanctions, more restrictive sanctions, or a 12-month prison term. This appeal followed.[1]

## II. ASSIGNMENTS OF ERROR

**{¶9}** Trego presents three assignments of error:

I. The Chillicothe Police Department conducted an improper inventory search, violating Trego's Fourth Amendment right to be free from unreasonable searches and seizures, in violation of the Fourth Amendment of the U.S. Constitution and Article I, Section 14 of the Ohio Constitution.

II. Trego's trial counsel was ineffective in failing to file a motion to suppress the evidence police obtained through an unconstitutional search, in violation of the Sixth Amendment of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

III. Trego's conviction was against the manifest weight of the evidence, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, Sections 10 and 16, of the Ohio Constitution.

## III. COMPLIANCE WITH APPELLATE RULES

**{¶10}** Before we address the merits of the assignments of error, we must address a preliminary matter. The first section of the "Law and Argument" portion of Trego's appellant's brief is titled: "I. Trego's Fourth Amendment rights were violated when Officer Music searched the vehicle Trego was driving, and trial counsel was ineffective for not filing a motion to suppress. (Assignments of Error I and II, Argued Together.)" After an introductory paragraph, this section is divided into two subsections. The first subsection is titled: "A. Officer Music violated Trego's Fourth Amendment rights by conducting an improper search of the vehicle Trego was driving." This subsection is further divided into two sub-subsections titled: "1. Officer Music used an inventory search as the basis for

---

[1] After Trego filed this appeal, the trial court found that he violated his community control sanctions and was no longer amenable to available community control sanctions, and the court sentenced him to 12 months in prison.

searching Trego's vehicle without a warrant, but the vehicle was not lawfully impounded at the time of the search," and "2. Officer Music's search does not fall under any other exception to the warrant requirement." The second subsection is titled: "B. Defense counsel was ineffective for failing to file a motion to suppress the evidence obtained from Officer Music's unconstitutional search of the vehicle."

**{¶11}** The state asks us to summarily affirm the trial court's judgment with respect to the issues raised in the first and second assignments of error on the ground that Trego failed to separately argue the assignments of error as required by the appellate rules. The state asserts that the appellant's brief "comingles the argument for the two separate assignments of error, which is confusing because different standards of review apply." The state asserts that "[t]his is especially troublesome" because Trego's arguments appear to be broader than his assignments of error.

**{¶12}** Trego acknowledges that he placed his arguments for the first and second assignments of error under "the same main heading because both claims arise out of the same set of operative facts—the unconstitutional inventory search." However, he asserts that the assignments of error were still separately argued under different subsections— the argument for the first assignment of error is under Section I.A., and the argument for the second assignment of error is under Section I.B. of his appellant's brief. He claims that his "use of the parenthetical '(Assignments of Error I and II, Argued Together)' " was "merely a guide to let the reader know that both of those Assignments of Error will be argued under the same main heading."

**{¶13}** App.R. 16(A)(7) states: "The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of

error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) states: "The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Therefore, we have discretion to disregard any assignments of error which are not separately argued. *In re F.T.*, 4th Dist. Ross No. 22CA17, 2023-Ohio-191, ¶ 34. "We prefer, however, to decide cases on their merits rather than procedural technicalities." *Id.*

{¶14} The organization of the "Law and Argument" section of Trego's appellant's brief is confusing, primarily because at first glance, the argument under Section I.A.—which examines multiple exceptions to the warrant requirement—appears broader in scope than the first assignment of error—which explicitly mentions only the inventory-search exception. However, implicit in the first assignment of error is a contention that no other exception to the warrant requirement applies to the vehicle search. If one did, the search would be constitutional even if it did not meet the requirements of the inventory-search exception. Therefore, we conclude that while the appellant's brief could have been clearer, Trego separately argued the first and second assignments of error in accordance with App.R. 16(A)(7). He argued the first assignment of error under Section I.A. and the second assignment of error under Section I.B. of his appellant's brief. Therefore, we will address the merits of those assignments of error.

## IV. CONSTITUTIONALITY OF THE VEHICLE SEARCH

{¶15} In the first assignment of error, Trego contends the police conducted an improper inventory search, violating his constitutional right to be free from unreasonable

searches and seizures. Trego asserts that Officer Music relied on the inventory-search exception to the warrant requirement to justify the vehicle search. Trego suggests that exception does not apply because Officer Music "did not finish filling in all the required information on" the inventory sheet, i.e., the VIN number. Trego also asserts "Officer Music did not conduct an inventory search because there is no evidence that the vehicle was lawfully impounded." Trego claims the record is silent about whether the vehicle "was ultimately impounded, towed, parked, or driven away from the scene," and "[i]f the car was not impounded or taken into police custody, then any search of the vehicle could not have been an administrative inventory search." Trego claims that even if the vehicle was impounded, the timing of the search was still improper. He asserts that "[w]ithout access to Chillicothe Police policies and procedures on how to conduct inventory searches and impound vehicles * * * we must rely on case law for the limits of when inventory searches can occur." He relies on *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.E.2d 1000 (1976), and *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, for the position that the only proper time to conduct an inventory search is either "(1) after the vehicle arrives at an impound lot, or (2) after the vehicle driver is arrested while the vehicle is awaiting towing to the impound lot." Trego claims neither event preceded the search here.

{¶16} Trego asserts the vehicle search also does not fall under any other exception to the warrant requirement. Therefore, he asserts evidence flowing from the search should have been excluded from trial and asks us to reverse his conviction and remand for a new trial. Alternatively, he asserts that if we require "additional information on the circumstances surrounding the alleged inventory search," we should remand for a

hearing and fact-finding. He relies on *State v. Groce*, 10th Dist. Franklin No. 06AP-1094, 2007-Ohio-2874, to support his position.

### A. Standard of Review

**{¶17}** Trego asserts de novo review applies to his first assignment of error. The state asserts plain error review applies because Trego did not file a motion to suppress. Trego asserts that even if we apply plain error review, he has met that standard.

**{¶18}** The exclusionary rule bars the use of evidence secured by an unconstitutional search and seizure. *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, ¶ 40. "[A] motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule * * *." *State v. French,* 72 Ohio St.3d 446, 449, 650 N.E.2d 887 (1995). Pursuant to Crim.R. 12(C)(3), "[m]otions to suppress evidence * * * on the ground that it was illegally obtained" "must be raised before trial." Crim.R. 12(H) states: "Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial * * * *shall constitute waiver* of the defenses or objections, but the court for good cause shown may grant relief from the waiver." (Emphasis added.)

**{¶19}** Crim.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The defendant has the burden to "establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 21 (4th Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the

syllabus. Appellate courts may consider a forfeited argument, but not a waived one, under a plain-error analysis. *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23. "[F]orfeiture is a failure to preserve an objection." *Id.* "Waiver is the intentional relinquishment or abandonment of a right." *Id.*

{¶20} Trego did not file a motion to suppress the evidence obtained as a result of the vehicle search; therefore, pursuant to Crim.R. 12(H), he waived the right to object to that evidence on the ground that it was illegally obtained via an unconstitutional search. He did not seek relief from that waiver in the trial court or make any objection at trial to evidence flowing from the search. We have held that an appellant's failure to file a motion to suppress and further failure to object to evidence at trial on the specific grounds raised on appeal "results in a waiver and is fatal" to the appellant's argument on appeal that the trial court committed reversible error by not excluding the evidence. *State v. Chafin*, 4th Dist. Scioto No. 16CA3769, 2017-Ohio-7622, ¶ 19. However, as we explain below, even if we treated Trego's failure to file a motion to suppress and object as a forfeiture subject to plain error review, rather than a waiver, Trego failed in his burden to show plain error.

### B. Constitutional Principles

{¶21} The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains almost identical language. It "affords the same protection

as the Fourth Amendment in felony cases." *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12.

**{¶22}** "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (Footnotes omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Inventory searches are a 'well-defined exception to the warrant requirement of the Fourth Amendment.'" *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999), quoting *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." *Id.*, citing *Opperman*, 428 U.S. at 369, 96 S.Ct. 3092, 49 L.E.2d 1000. "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." *Id.*, citing *Opperman* at 370, fn. 5. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Id.*, citing *Opperman* and *Bertine*. "To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph one of the syllabus.

C.  Analysis

**{¶23}** Trego has not shown that the vehicle search does not fall under the inventory-search exception to the warrant requirement.

1.  Inventory Sheet

**{¶24}** Trego's suggestion that the inventory-search exception does not apply because Officer Music failed to record the vehicle's VIN number on the inventory sheet is not well-taken.  He cites no legal authority for this position.  Therefore, we reject it.

2.  Timing of Search

**{¶25}** Trego's contention that the inventory-search exception does not apply because the search was not preceded by either his arrest or the towing of the vehicle to an impound lot is not well-taken.  His reliance on *Opperman* and *Banks-Harvey* is misplaced.  In *Opperman*, the respondent's unoccupied, illegally parked vehicle was towed to a city impound lot.  428 U.S. at 365-366, 96 S.Ct. 3092, 49 L.E.2d 1000.  From outside the car at the impound lot, an officer saw personal property inside the car, including a watch.  *Id.* at 366.  The officer inventoried the contents of the car "pursuant to standard police procedures" and found marihuana.  *Id.*  The respondent was arrested on possession charges and convicted after his motion to suppress the evidence from the inventory search was denied.  *Id.*  The South Dakota Supreme Court reversed his conviction, but the United States Supreme Court reversed that judgment.  *Id.* at 366-367.

**{¶26}** The United States Supreme Court explained that the reasonableness of a search for purposes of the Fourth Amendment depends on the facts and circumstances.  *Id.* at 375.  The court found that the police "were indisputably engaged in a caretaking search of a lawfully impounded vehicle."  *Id.*  The court explained that "[t]he inventory was

conducted only after the car had been impounded for multiple parking violations," the owner "was not present to make other arrangements for the safekeeping of his belongings," the inventory "was prompted by the presence in plain view of a number of valuables inside the car," and there was "no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." *Id.* at 375-376. "On this record," the court found the search was not unreasonable under the Fourth Amendment. *Id.* at 376.

**{¶27}** In *Banks-Harvey*, a state trooper conducted a traffic stop of a vehicle containing three occupants—the defendant who was driving the vehicle, her boyfriend who owned the vehicle, and a third person. 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, at ¶ 2 (plurality opinion). The defendant and third person were arrested on outstanding warrants. *Id.* at ¶ 4. The trooper then entered the vehicle, retrieved the defendant's purse, searched it, and found various pills and capsules and three needles, one of which contained brown liquid. *Id.* at ¶ 5. The trooper showed the drugs to an officer, who then said he might have seen a capsule in the vehicle. *Id.* The officer searched the vehicle and found capsules and a needle. *Id.* The vehicle was not impounded, and the defendant's boyfriend was permitted to drive it away. *Id.* The defendant was charged with drug-related offenses based on the items in her purse. *Id.* at ¶ 6. She moved to suppress that evidence, but the trial court denied the motion. *Id.* at ¶ 6, 9. She pleaded no contest to the charges and appealed her convictions, which the appellate court affirmed. *Id.* at ¶ 10-12.

**{¶28}** The Supreme Court of Ohio reversed the appellate court's judgment and vacated the convictions. *Id.* at ¶ 39. The plurality opinion concluded the inventory-search

exception to the warrant requirement did not apply. *Id.* at ¶ 22. The plurality found that a law enforcement policy of transporting an arrestee's property with the arrestee was insufficient justification for the warrantless retrieval of the purse from the car. *Id.* at ¶ 22. The plurality took "no issue with the reasonableness of an administrative policy requiring the search and inventory of personal items that necessarily come into police custody as a result of an arrest." *Id.* at ¶ 23. However, the plurality explained that the trooper "retrieved a personal item belonging to an arrestee from a place that is protected under the Fourth Amendment (the car)" and neither the purse, nor the vehicle containing it "came into police custody as a result of her arrest." *Id.*

{¶29} Even though *Opperman* involved a search at an impound lot and *Banks-Harvey* involved a search after a driver's arrest, nothing in those opinions stands for the proposition that an inventory search of a vehicle is improper unless it occurs at an impound lot or is preceded by the driver's arrest. As the state points out, in *State v. Goodin*, 4th Dist. Athens No. 99CA29, 2000 WL 134733 (Jan. 28, 2000), we rejected a contention than an inventory search was unlawful because it was "not conducted after the vehicle was impounded as required in *Opperman*." *Id.* at *4. We explained that "all the *Opperman* factors need not be met in order for an inventory search to be lawful. Rather, *Opperman* requires that the court examine the totality of the circumstances in each case to ensure that the search was reasonable and not for investigatory purposes." *Id.* We also explained that in *State v. Peagler*, 76 Ohio St.3d 496, 668 N.E.2d 489 (1996), "the Supreme Court of Ohio noted * * * an inventory search that is conducted prior to impoundment is not automatically unreasonable and unconstitutional." *Id.* And we observed that "[p]rotection of the property owner from loss and protection of the police

from false claims are both often better served by an early inventory before the vehicle is moved." *Id.*

**{¶30}** For these reasons, we reject the contention that the inventory-search exception does not apply because the vehicle search was not preceded by Trego's arrest or the towing of the vehicle to an impound lot.

### 3. Impoundment

**{¶31}** Based on the record before us, we are unable to determine whether the vehicle was in fact impounded. *See generally State v. Fry*, 9th Dist. Summit No. 16718, 1994 WL 700089, *2, fn. 3 (Dec. 14, 1994), quoting *Black's Law Dictionary* 756 (6th Ed.Rev.1990) (" 'Impound' means '[t]o seize and take into the custody of the law or of a court' "). No evidence was presented at trial regarding what happened to the vehicle after Officer Music searched it. The state asserts that a police report Trego attached as an exhibit to a post-conviction motion shows the vehicle was towed to an impound lot. The report includes a narrative by Officer Music stating that he told Trego that he "would be towing the vehicle" and stating that " '[t]he inventory was completed and the vehicle was released to Letches Towing.' " The report does not state where the towing company took the vehicle or provide any other information regarding the towing process.

**{¶32}** However, the fact that the record lacks sufficient information to determine whether the vehicle was impounded does not prove that the inventory-search exception to the warrant requirement does not apply. Nor does this lack of information entitle Trego to an order remanding this matter for a hearing and fact-finding. Again, it is Trego's burden to demonstrate plain error, *Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, at ¶ 21, and

as the appellant, he "bears the burden of showing error by reference to matters in the record," *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

**{¶33}** *Groce* is inapposite. In that case, officers stopped the defendant for illegally riding his bicycle on a sidewalk. *Groce,* 10th Dist. Franklin No. 06AP-1094, 2007-Ohio-2874, at ¶ 2. After the officers issued the defendant a citation, they learned he had an outstanding warrant and arrested him. *Id.* at ¶ 2. At some point during the encounter, the officers searched him and found a small, blue plastic container on a key chain with crack cocaine inside. *Id.* at ¶ 2. The defendant was charged with possession and moved to suppress the crack cocaine. *Id.* at ¶ 3. At the suppression hearing, one of the officers testified that the search occurred after the defendant's arrest, but the defendant testified that the search occurred after the officers issued the citation but before his arrest. *Id.* The trial court granted the motion to suppress, and the state appealed. *Id.* at ¶ 4-5.

**{¶34}** The appellate court explained that "a *Terry* search may be conducted without probable cause to arrest and is limited to a search for weapons based upon the officer's reasonable suspicion that the suspect is armed and dangerous" whereas "a search incident to an arrest allows an officer to conduct a full search that is not limited to the discovery of weapons but may include evidence of crimes as well." *Id.* at ¶ 11. Thus, the "determinative factual issue" was whether the search occurred before or after the arrest. *Id.* at ¶ 14. However, there was conflicting evidence on this issue, and the record did "not reflect a clear factual finding by the trial court" on the timing of the search. *Id.* Without such a finding, the appellate court could not "properly review the trial court's suppression order." *Id.* Therefore, the appellate court vacated the trial court's judgment and remanded with instructions for the trial court "to factually determine when the search

occurred" and "then proceed to decide whether suppression is appropriate based on whether the search occurred before or after the arrest." *Id.*

**{¶35}** This case is factually distinguishable from *Groce.* Trego did not file a motion to suppress, so there was no suppression hearing at which the parties presented conflicting evidence on a determinative factual issue which the trial court failed to resolve. Nothing in *Groce* supports the position that if a defendant fails to file a motion to suppress and challenges the constitutionality of a search for the first time on appeal, an appellate court should remand the matter for an evidentiary hearing and fact-finding if the record is silent on a matter that is relevant to the challenge.

### 4. Conclusion

**{¶36}** For the foregoing reasons, we conclude that Trego failed to show that the Chillicothe Police Department conducted an improper inventory search of the vehicle. Because at least one exception to the warrant requirement might justify the search, Trego has not demonstrated that the search violated his constitutional rights, and it is unnecessary for us to consider the applicability of other exceptions to the warrant requirement. Trego has not shown that the trial court erred, let alone plainly erred, when it admitted evidence obtained as a result of the vehicle search at trial. Accordingly, we overrule the first assignment of error.

### V. INEFFECTIVE ASSISTANCE OF COUNSEL

**{¶37}** In the second assignment of error, Trego contends that trial counsel was ineffective in failing to file a motion to suppress evidence obtained through an unconstitutional search. Trego maintains that under the first assignment of error, he demonstrated that he has a meritorious Fourth Amendment claim regarding the vehicle

search. Trego asserts that in a case such as this "where there is a clear-cut Fourth Amendment violation, failing to file a motion to suppress is substandard representation." He claims that trial counsel not only failed to file a motion to suppress but also "failed to file *any* pretrial motion" except "standard discovery and testimony demands," "did not make a single objection" at trial with one possible exception, and failed to make a Crim.R. 29 motion for acquittal even though that "is considered standard practice." (Emphasis sic.) Trego claims counsel's continued failures "to take beneficial actions on [his] behalf * * * were not tactical in nature." Trego maintains that there is a reasonable probability that the verdict would have been different if the evidence flowing from the vehicle search had been suppressed. Trego asserts the only other evidence the state had was that he "possessed an empty plastic container with 'residue' that was never tested in any capacity," which "does not amount to proof beyond a reasonable doubt."

## A.  Legal Principles

**{¶38}** To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to satisfy either part of the test is fatal to the claim. *See Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We "must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955).

{¶39} "The 'failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel.' " *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 94, quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "Instead, the ordinary two-part *Strickland* analysis for ineffective-assistance claims applies." *Id.* The defendant "must both 'prove that there was a basis to suppress the evidence in question,' *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, and demonstrate a reasonable probability that had the evidence been suppressed, 'the result of the proceeding would have been different,' *Strickland* at 694." *Id.*

{¶40} "[I]t may be difficult for a defendant to establish in hindsight that a suppression motion would have been granted on the basis of evidence contained in a trial transcript." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 14. " '[T]he record developed at trial is generally inadequate to determine the validity of [a] suppression motion' because the issues at trial are different than the issues at a suppression hearing." (First alteration sic.) *State v. Oliver*, 2018-Ohio-3667, 112 N.E.3d 573, ¶ 38 (8th Dist.), quoting *State v. Culbertson*, 5th Dist. Stark No. 2000CA00129, 2000 WL 1701230, *4 (Nov. 13, 2000). " ' "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met [the appellant's] burden of proving that [the appellant's] attorney violated an essential duty by failing to file the

motion." ' " *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 126, quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). Additionally, " '[w]here the record is not clear or lacks sufficient evidence to determine whether a suppression motion would have been successful, a claim for ineffective assistance of counsel cannot be established.' " *State v. Barfield*, 4th Dist. Ross No. 13CA3387, 2015-Ohio-891, ¶ 16, quoting *State v. Parkinson*, 5th Dist. Stark No. 1995CA00208, 1996 WL 363435, *3 (May 20, 1996).

### B.  Analysis

**{¶41}** Trego has failed in his burden to show that trial counsel was deficient for not filing a motion to suppress.  As we explained in our discussion of the first assignment of error, Trego failed to show that the Chillicothe Police Department conducted an improper inventory search of the vehicle.  Because at least one exception to the warrant requirement might justify the search, Trego has not shown there was a basis to suppress the evidence obtained as a result of the search.[2]

**{¶42}** Therefore, we conclude that Trego failed in his burden to show that trial counsel was ineffective in failing to file a motion to suppress.  To the extent Trego suggests trial counsel was ineffective for additional reasons, his arguments are beyond the scope of the second assignment of error, so we need not address them.  *See State v. Nguyen*, 4th Dist. Athens No. 14CA42, 2015-Ohio-4414, ¶ 41 (an appellate court

---

[2] Trego previously moved this court to supplement the record with police body camera footage which he claims shows the vehicle was not impounded.  We denied his motion, explaining that the footage "was not presented to the trial court and is not part of the record on appeal" and that "[a] reviewing court cannot permit anything to be added to the record that was not part of the trial court's proceedings and then use the added matter to decide the appeal."  A petition for postconviction relief is the proper vehicle to raise an ineffective assistance claim which relies on evidence outside the record.  *State v. Lindsey*, 4th Dist. Washington Nos. 20CA26, 20CA27, 20CA28, & 20CA9, 2021-Ohio-2613, ¶ 19, fn. 2.

reviews "assignments of error and not mere arguments"). Accordingly, we overrule the second assignment of error.

## VI.  MANIFEST WEIGHT OF THE EVIDENCE

**{¶43}**  In the third assignment of error, Trego contends his conviction was against the manifest weight of the evidence. Trego asserts that the evidence does not show that he knowingly possessed methamphetamine. He acknowledges there is some evidence from which one could infer he knew about the methamphetamine in the vehicle but claims the evidence is not substantial and is far outweighed by evidence to the contrary. Trego summarizes the testimony he believes shows he did not knowingly possess the bag of methamphetamine, such as his own testimony that he did not know about the methamphetamine or pipe and had just acquired the vehicle and had not cleaned it out yet. Trego claims his credibility is bolstered by the fact that he testified under oath and "under penalty of perjury," his testimony "was consistent with Officer Music's testimony," he "remained unwavering in his position that he had no knowledge of the bag of methamphetamine," and he "told the truth, even when it meant providing damaging information," i.e., information about his struggle with addiction and prior convictions. Trego also directs our attention to some cases in which this court and other appellate courts rejected manifest weight of the evidence arguments in drug possession cases and identifies evidence which was present in those cases but not in this one, such as evidence that he interacted with the bag of methamphetamine during the traffic stop or was under the influence during it.

## A.  Legal Principles

**{¶44}** In determining whether a conviction is against the manifest weight of the

evidence, an appellate court

> must review the entire record, weigh the evidence and all reasonable
> inferences, consider the credibility of witnesses, and determine whether, in
> resolving conflicts in the evidence, the trier of fact clearly lost its way and
> created such a manifest miscarriage of justice that reversal of the conviction
> is necessary.  In order to satisfy this test, the state must introduce
> substantial evidence on all the elements of an offense, so that the jury can
> find guilt beyond a reasonable doubt.
>
> Although a court of appeals may determine that a judgment of a trial court
> is sustained by sufficient evidence, that court may nevertheless conclude
> that the judgment is against the weight of the evidence.  However, we are
> reminded that generally, it is the role of the jury to determine the weight and
> credibility of evidence.  " 'A jury, sitting as the trier of fact, is free to believe
> all, part or none of the testimony of any witness who appears before it.' "
> *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338,
> ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-
> 1941, ¶ 23.  We defer to the trier of fact on these evidentiary weight and
> credibility issues because it is in the best position to gauge the witnesses'
> demeanor, gestures, and voice inflections, and to use these observations
> to weigh their credibility.

(Citations omitted.)  *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395,

¶ 14-15.

**{¶45}** R.C. 2925.11(A) states:  "No person shall knowingly obtain, possess, or use

a controlled substance or a controlled substance analog."  R.C. 2901.22(B) states:

> A person acts knowingly, regardless of purpose, when the person is aware
> that the person's conduct will probably cause a certain result or will probably
> be of a certain nature.  A person has knowledge of circumstances when the
> person is aware that such circumstances probably exist.  When knowledge
> of the existence of a particular fact is an element of an offense, such
> knowledge is established if a person subjectively believes that there is a
> high probability of its existence and fails to make inquiry or acts with a
> conscious purpose to avoid learning the fact.

" 'The intent of an accused person dwells in [that person's] mind' " and " 'can never be proved by the direct testimony of a third person.' " *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus.  Whether a defendant knowingly obtained, possessed, or used a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

**{¶46}** " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).  We have explained:

> Possession may be actual or constructive.  " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." [*State v.*] *Hankerson*, [70 Ohio St.2d 87, 434 N.E.2d 1362 (1982),] syllabus * * *.  For constructive possession to exist, the state must show that the defendant was conscious of the object's presence.  Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence.

(Citations omitted.)  *State v. Smith*, 2020-Ohio-5316, 162 N.E.3d 898, ¶ 36 (4th Dist.). " 'A defendant's mere presence in an area where drugs are located is insufficient to demonstrate that the defendant constructively possessed the drugs.' * * * However, 'when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established.' " *State v. Holdren*, 4th Dist. Pickaway No. 20CA3, 2021-

Ohio-810, ¶ 26, quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 40-41.

### B. Analysis

**{¶47}** After weighing the evidence and all reasonable inferences, considering the credibility of the witnesses after according the requisite deference to the jury's determinations, we conclude that in resolving evidentiary conflicts, the jury did not clearly lose its way or create a manifest miscarriage of justice in finding Trego knowingly possessed the methamphetamine in the vehicle. The traffic stop occurred around 4:20 a.m.—an unusual time to be engaged in conduct related to the purchase of a vehicle. Trego acknowledged ownership of the vehicle though it was still registered under the previous owner's name, and according to Trego, the title still had to be notarized. Officer Music found the bag of methamphetamine and pipe within easy access of the driver's seat which Trego occupied shortly before the search—the methamphetamine was right above the driver's seat and the pipe was right next to it. Trego admitted that he had struggled with a drug problem, and his claimed period of sobriety began several months *after* the traffic stop. At the time of the traffic stop, Trego was carrying a clear container in his pants pocket with a crystal rock residue inside. Although Trego denied keeping methamphetamine in the container, and the state did not test the residue for the presence of a controlled substance, in the photographic evidence, the residue looks like the crystal substance found in the vehicle which was confirmed to be methamphetamine.

**{¶48}** It is true Trego offered direct evidence—his own testimony—that he did not know the methamphetamine was in the vehicle, and the state presented only circumstantial evidence that he did. However, "[c]ircumstantial and direct evidence are

of equal evidentiary value." *State v. King*, 4th Dist. Meigs No. 21CA2, 2022-Ohio-4616, ¶ 24. And again, a jury " ' "is free to believe all, part or none of the testimony of any witness who appears before it." ' " *Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, at ¶ 15, quoting *Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, at ¶ 17, quoting *West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, at ¶ 23. Therefore, even if the jury found some of Trego's testimony credible, it had no obligation to believe his testimony that he did not know about the methamphetamine in the vehicle, particularly when he was carrying residue in his pants pocket which looked similar to the methamphetamine in the vehicle.

{¶49} For the foregoing reasons, we conclude Trego's conviction was not against the manifest weight of the evidence, and we overrule the third assignment of error.

## VII. CONCLUSION

{¶50} Having overruled the three assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
         Michael D. Hess, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**