[Cite as *State v. Webb*, 2023-Ohio-4050.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

State of Ohio,                          :          Case No.   22CA18

    Plaintiff-Appellee,              :
                                     DECISION AND
v.                                       :          JUDGMENT ENTRY

Russell M. Webb,                        :

    Defendant-Appellant.             :          **RELEASED 11/3/23**

_____

APPEARANCES:

Tyler C. Haslam, Haslam Law Firm LLC, Huntington, West Virginia, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

_____

Hess, J.

{¶1}   Russell M. Webb appeals from judgments of the Lawrence County Court of Common Pleas in two cases convicting him, following a jury trial, of tampering with evidence and voyeurism.  Webb presents four assignments of error asserting (1) the trial court erred when it denied his motion for a more specific bill of particulars; (2) the trial court erred when it allowed the state to introduce metadata which was produced the morning of trial and without an expert report; (3) the trial court erred when it denied his Crim.R. 29 motion for judgment of acquittal on the tampering count, and his conviction on that count is against the manifest weight of the evidence; and (4) the trial court erred when it denied him a new trial based on the introduction of the metadata.  For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgments.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Pre-Trial Proceedings

**{¶2}**    On May 25, 2022, the Lawrence County grand jury indicted Webb in Case No. 22-CR-153 on one count of voyeurism in violation of R.C. 2907.08(A), a third-degree misdemeanor, alleged to have occurred on or about February 17, 2022, and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony, alleged to have occurred on or about February 22, 2022. The charges stemmed from Webb's alleged placement of an iPad in his office at Symmes Valley High School to record H.B. changing there and the subsequent disappearance of the iPad.  Webb pleaded not guilty.

**{¶3}**    Webb made a demand for discovery which is not in the record, and on August 29, 2022, the state filed an answer to it.  Among other things, the state attached to the answer hardcopies of photos of an iPad and office, and the state attached a written statement from H.B. indicating that on February 22, 2022, she took photos in Webb's office of an iPad "recording and how it was set up."  At an October 5, 2022 pretrial hearing, defense counsel discussed filing various motions and then said, "[T]here were photographs taken of the purported iPad that Mr. Webb possessed.  What I was provided with were scanned-in copies of printouts.  If the [s]tate can produce[ ] the original digital copies, that would greatly assist, I believe, in getting some of these issues resolved." On October 13, 2022, the state filed an update to discovery indicating it was providing "(1) CD containing photographs taken by the victim. (see attachment)."  A copy of this CD is not in the record.

**{¶4}**    Evidently on October 13, 2022, criminal complaints were filed against Webb in Case Nos. 22-CR-325 and 22-CR-326, alleging one count each of voyeurism in

violation of R.C. 2907.08(D), first-degree misdemeanors.  The state moved to consolidate all three cases against Webb. He opposed the motion, moved to dismiss the two new cases, and requested a bill of particulars in Case No. 22-CR-153.

{¶5}   On November 1, 2022, the grand jury indicted Webb in Case No. 22-CR-373 on three counts of voyeurism.  The first and second counts alleged violations of R.C. 2907.08(D), first-degree misdemeanors, occurring on or about February 17, 2022, and February 22, 2022. The third count alleged a violation R.C. 2907.08(A), a third-degree misdemeanor, occurring on or about February 22, 2022.  The first and second counts were evidently repetitious of the charges in Case Nos. 22-CR-325 and 22-CR-326.  The day the new indictment was filed, the trial court conducted a hearing at which the prosecutor moved to nolle the charges in Case Nos. 22-CR-325 and 22-CR-326. The court granted the motion.  The court also arraigned Webb in Case No. 22-CR-373, and he pleaded not guilty.  The prosecutor moved to consolidate Case Nos. 22-CR-153 and 22-CR-373, and the court granted the motion and instructed the parties that trial would commence on November 14, 2022.

{¶6}   Prior to trial, the state filed a bill of particulars which stated the following with respect to the tampering with evidence charge:

> On February 22, 2022, Russell Martin Webb, in Lawrence County, Ohio, knowing that an official proceeding or investigation was in progress, or likely to be in [sic] instituted, did destroy, alter, conceal, discard, and remove an iPad and a cardboard box (with holes cut in it) by intentionally placing the iPad and cardboard box on the back of his truck, within view of security cameras, placing a can of white spray paint in the box (with holes cut in it) to assure enough weight existed that the items would not move until such time as he was ready to dispose of said property.  The Defendant, Russell Martin Webb, did destroy and/or hide and/or discard the iPad and cardboard box (with holes cut in it) for the purpose of impairing its value as evidence * * *.

Subsequently, Webb filed a motion for a more specific bill of particulars, or in the alternative, a motion to dismiss, asserting the state had failed to provide certain information regarding the tampering charge.

## B. Morning of Trial

{¶7} The morning of trial, the state filed an update to discovery stating that "[d]ocuments and tangible objects to be offered as evidence at trial of this matter include photos previously given in discovery with Meta-data." The state attached to the update hardcopies of six photos. The top of each image is a photo of an iPad and/or office, and the bottom of each image contains information such as a date, time, image number, and camera settings.

{¶8} After the trial court went on the record, the state moved the court to nolle the first-degree misdemeanor voyeurism counts in Case No. 22-CR-373, and the court granted the motion. The court denied Webb's motion for a more specific bill of particulars, or in the alternative, to dismiss. Defense counsel moved the court to continue Case No. 22-CR-373, noting that he only had "13 days to prepare for trial." The trial court denied the motion. Defense counsel then made a motion in limine regarding the metadata update to discovery, stating:

> As we walked in, we were handed an update to discovery that purports to be metadata of photographs. We originally requested all metadata be produced previously in this case. The time stamp of this is 8:35 this morning, so the day of trial. What it appears to be are photographs. These photographs were previously produced in discovery, but what's happened is it looks like based off familiarity with the IOS operating system that somebody swiped up to show the date and time that the photos were purportedly reported -- or produced. Your Honor, that doesn't actually constitute the metadata, the zeros and ones that go into such photographs.
>
> Not only that * * * to the extent that the [s]tate would intend to introduce that, I believe that would require expert testimony under Rule 702. And as such,

under Rule 16(k) the [s]tate would be required to produce an expert report at least 21 days prior to trial. So dropping this on us the morning of trial, I believe warrants excluding this evidence.

The court denied the motion.

### C. Trial

{¶9} The matter proceeded to a jury trial. Although several witnesses testified, only the testimony most pertinent to this appeal is summarized below.

### 1. Testimony of H.B.

{¶10} H.B. testified that during the 2021-2022 school year she was in tenth grade at Symmes Valley High School, and Webb was her gym teacher. Before Thanksgiving break, H.B. started having problems with another female student. After break, Webb told H.B. she needed to start changing in his office instead of the girls' locker room due to concern that she would get in a fight with the other student there. At some point, H.B. asked if she could change in the locker room again because she had been getting along with the other student "for a couple weeks." Webb declined her request.

{¶11} On February 17, 2022, when H.B. went to change in Webb's office after gym class, "there was an iPad set up behind the door, and it was recording for a little over 10 minutes." She stopped the recording, changed, and left. She told her family what happened, and they told her that she could not report Webb without proof, and if it happened again, she should get evidence. On February 22, 2022, H.B. went to Webb's office to change before gym class and saw the iPad propped up, but it was not recording. H.B. took four photos with her cell phone. One photo shows the iPad sitting on the floor close to a wall. The screen is angled toward the wall and objects on the floor; the back of the iPad is angled so that it is facing into the office. One photo shows the area of the

office the back of the iPad was facing, and the other two photos show the iPad screen. H.B. changed and went to class. When she returned to Webb's office to change after class, she took a photo showing the iPad sitting in roughly the same position as before. She tilted the iPad and photographed the screen, which showed the iPad had been recording for 5 minutes and 58 seconds. In this photo, the back of the iPad is facing the carpeting, and the carpeting is visible on the iPad screen. H.B. stopped the recording, got dressed, and left. She reported what happened to a trusted teacher shortly before the school day ended at 2:40 p.m.

### 2. Testimony of Sergeant Wilson

**{¶12}** Sergeant David Scott Wilson of the Lawrence County Sheriff's Office testified that he is the county school resource officer. On February 23, 2022, the superintendent for Symmes Valley High School contacted him regarding a complaint about a teacher possibly videotaping a student. Sergeant Wilson got a written statement from Webb making the following claims. Webb brought his black iPad to school on February 17th to update games on it because he did not have a strong enough Internet connection to do so at home. He unsuccessfully tried to connect the iPad to the school's Wi-Fi from his office and the weight room. On February 22nd, he brought his iPad to school and again unsuccessfully tried to connect to the school's Wi-Fi. At lunchtime he took the iPad to the weight room to try there and still had no luck. After school, he went to take the iPad home but left it on his truck bed cover, which was "verified by camera." When he got home, the iPad was not there. Webb stated that he would "keep looking to find it."

### 3. Testimony of Randall Boggs

**{¶13}** Randall Boggs, safety and security administrator for the Symmes Valley School District, testified that he monitors the high school's camera system. Boggs testified that he is friends with Webb, that Webb had a personal, black iPad which he used daily, and that Boggs "teased" him "all of the time about playing saving-the-world video games" on it. On February 23, 2022, around 7:31 a.m., Webb told Boggs that he "may have done something silly" and "may have left my iPad on top of my truck and drove off last night." Webb asked Boggs to review the school's camera footage to see if he did. Boggs did so and saw that Webb put the iPad on his truck and drove off, and the iPad was not on the truck when Webb returned. Around 9:10 a.m., Webb told Boggs that he had been placed on administrative leave "over the iPad."

**{¶14}** Pursuant to a subpoena, Boggs compiled video footage from the school. The February 17th footage shows Webb entering the hallway in the gym where his office and the boys' locker room are located around 9:48:29 a.m. Webb reenters the gym around 9:49:54 a.m., and H.B. enters the hallway around 9:59:05 a.m. as gym class appears to end. The February 22nd footage shows H.B. exiting the hallway and entering the gym around 9:29:26 a.m. H.B. and other students participate in gym class. Around 9:59:02 a.m., Webb enters the hallway. He reenters the gym about a minute later. Around 10:04:27, H.B. enters the hallway as gym class appears to end. Later, around 11:38:53 a.m., Webb walks through the gym and appears to be carrying a box. Around 11:41:33 a.m., he enters a building carrying a box, and he exits about two minutes later without it. Around 2:46:31 p.m., he reenters, and he emerges about 12 minutes later carrying what appears to be a box with a black object beneath it. He goes to a parking

lot, puts what he is carrying on top of a pickup truck bed cover, opens the back driver's side door, takes an object out of the vehicle, puts it in the box, and closes the door. He opens the front driver's side door, gets in, and drives away. When he returns around 3:10:25 p.m., nothing is on top of the truck bed cover.

### 4. Testimony of Brian Chaffins

{¶15} Brian Chaffins testified that he works for the Lawrence County Prosecutor's Office and was assigned to assist the sheriff's office in this case. He met with H.B. to obtain "original copies" of photos "from her device." Chaffins testified that he plugged her phone into a computer and transferred photos from the phone to the computer. He testified, "I also wanted to be able to view the date and time stamp, which is not visible on the photos. At that point I had an airdrop from her phone to my phone." Defense counsel objected on the grounds that Chaffins was going to testify about the metadata, which was not provided to the defense "until right before jury selection" and required expert testimony and an expert report. The trial court overruled the objection. Chaffins testified that once the photos were airdropped, he obtained "[t]he date and time stamp." He explained that when a picture is "on your phone screen, you scroll up and it just shows you the information that's not visible. The picture date, time, and a few other small details." Chaffins identified hardcopies of six photos and explained that each image showed a photo from H.B. along with information about the date, time, and order in which the photos were taken. All the photos bear a date of February 22, 2022. The four photos H.B. testified that she took before gym class bear a time of 9:27 a.m. The two photos H.B. testified she took after gym class bear a time of 10:05 a.m. The image numbers indicate that the last photo taken was the one showing the iPad recording. Chaffins

testified that the photos truly and accurately reflected what H.B. gave him.  The trial court

admitted the photos including the metadata over objection.

### D.  Crim.R. 29 Motion, Verdict, Post-Trial Proceedings

{¶16}  At the close of the state's case-in-chief, Webb made a Crim.R. 29 motion

for judgment of acquittal, which the court denied.  In Case No. 22-CR-153, the jury found

him guilty of tampering with evidence but not guilty of voyeurism.  In Case No. 22-CR-

373, the jury found him guilty of the remaining third-degree misdemeanor voyeurism

count.  Webb filed a renewed motion for judgment of acquittal.  He also filed a motion for

a new trial based on the introduction of the metadata at trial.  The court denied the

motions.  In Case No. 22-CR-153, the court sentenced him to 36 months in prison. In

Case No. 22-CR-373, the court sentenced him to 60 days in jail.[1]  The court ordered the

sentences to run concurrently.

### II.  ASSIGNMENTS OF ERROR

{¶17}  Webb presents four assignments of error[2]:

I.      The trial court erred when it denied appellant's motion for more specific
        bill of particulars because the state did not set forth how appellant was
        supposedly aware that an official proceeding or investigation was likely
        or underway at the time he lost his iPad.

II.     The trial court erred when it allowed the state of Ohio to introduce
        metadata that was produced the morning of trial and without an expert
        report as required by Ohio R. Crim. P. 16(K).

III.    The trial court erred when it did not grant Mr. Webb's motion for acquittal
        pursuant to Rule 29 on the charge of tampering with evidence and his
        conviction is against the manifest weight of the evidence.

---

[1] The sentencing entry in Case No. 22-CR-373 incorrectly indicates that Webb was found guilty of tampering with evidence in that case when he was found guilty of voyeurism. Webb may request a nunc pro tunc entry from the trial court to correct this clerical mistake.  *See* Crim.R. 36.

[2] The assignments of error are taken from the page of Webb's brief titled, "APPELLANT'S ASSIGNMENTS OF ERROR."  The second assignment of error is worded somewhat differently on page 12 of the brief.

IV.     The trial court erred when it did not grant appellant a new trial because the production of the metadata the morning of trial and introduction of the metadata as evidence was an abuse of discretion.

### III.  BILL OF PARTICULARS

{¶18}  In the first assignment of error, Webb contends the trial court erred when it denied his motion for a more specific bill of particulars because the state did not set forth how he "was supposedly aware that an official proceeding or investigation was likely or underway at the time he lost his iPad."  Webb asserts that the state "cannot rely upon an indictment or bill of particulars that merely recites the generic words of a criminal statute in order to 1) place a defendant on notice of the charges against him and 2) provide sufficient information to allow him to prepare a defense."  Citing *State v. Childs*, 88 Ohio St.3d 194, 724 N.E.2d 781 (2000), and *State v. Troisi*, 169 Ohio St.3d 514, 2022-Ohio-3582, 206 N.E.3d 695, he asserts that "an indictment, as well as a subsequent bill of particulars, must allege specific facts that support each element of an offense in order to place the defendant on notice of the nature of the charges against him."  Webb maintains that the state "did not set forth any specific factual information in the bill of particulars that established" he "knew of a pending or likely investigation," "how he supposedly disposed of, hid, or discarded the iPad," or "his purpose for impairing its use at trial."  He asserts that "[o]ther than stating [he] placed the iPad and a box on the back of his truck," the state did not allege "anything beyond merely reciting the statutory elements."  He claims that "[w]ithout more factual detail in the bill of particulars," he "could not prepare a proper defense."

{¶19}  "The Ohio Constitution explicitly provides that a defendant has the right to know the nature of the accusation being made by the state:  'In any trial, in any court, the

party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof * * *.' " *State v. Haynes*, 171 Ohio St.3d 508, 2022-Ohio-4473, 218 N.E.3d 878, ¶ 18, quoting Ohio Constitution, Article I, Section 10. "Historically, this right was satisfied by detailed indictments. But with the advent of short-form indictments, bills of particulars became necessary in some cases to give the accused specifics as to what conduct the state was alleging constituted the offense, so that the accused could mount a defense." *Id.* "[T]he exact contours of that right are procedurally specified by Crim.R. 7(E)," *id.* at ¶ 19, which states:

> When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge[d] and of the conduct of the defendant alleged to constitute the offense.

{¶20} "There are no exceptions to the requirement; the state must provide a bill of particulars on a defendant's request, even when the prosecutor believes that the defendant is able to glean the nature and cause of the accusation against him from the discovery the state provided or from some other source." *Haynes* at ¶ 26. "The defendant, after all—not the prosecutor—is best situated to know whether or not he understands the accusation against him." *Id.* Whether the state failed to provide notice of a charge presents a question of law we review de novo. *See generally Troisi*, 169 Ohio St.3d 514, 2022-Ohio-3582, 206 N.E.3d 695, at ¶ 17 (whether state failed to provide notice of charges in violation of due process rights is question of law reviewed de novo).

{¶21} The state furnished Webb with a bill of particulars setting up specifically the nature of the tampering with evidence charge and the conduct of Webb alleged to

constitute the offense. The indictment essentially recited the language of R.C. 2921.12(A)(1), stating that on or about February 22, 2022, Webb, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, did alter, destroy, conceal, or remove any record, document or thing, with the purpose to impair its' [sic] value or availability as evidence in such proceeding or investigation." The bill of particulars went beyond the information in the indictment and stated that the offense in fact occurred on February 22, 2022, and described the conduct alleged to constitute the offense. The bill of particulars specified that Webb "did destroy, alter, conceal, discard, and remove an iPad and a cardboard box (with holes cut in it) by intentionally placing the iPad and cardboard box on the back of his truck, within view of security cameras, placing a can of white spray paint in the box (with holes cut in it) to assure enough weight existed that the items would not move until such time as he was ready to dispose of said property." The bill of particulars indicated Webb engaged in this conduct with the requisite knowledge and purpose.

{¶22} The state had no obligation to specify what evidence it intended to argue that showed Webb knew an official proceeding or investigation was in progress or likely to be instituted. " 'A bill of particulars has a limited purpose—to elucidate or particularize the conduct of the accused alleged to constitute the charged offense.' " *Haynes*, 171 Ohio St.3d 508, 2022-Ohio-4473, 218 N.E.3d 878, at ¶ 23, quoting *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). " 'A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery.' " *Id.*, quoting *Sellards* at 171. Moreover, "[a] defendant is not entitled to a prosecutor's work product, such as [the prosecutor's] trial strategy * * *." *Id.* at ¶ 22.

{¶23} Webb's reliance on *Childs* and *Troisi* is misplaced. *Childs* considered "whether an indictment for conspiracy pursuant to R.C. 2923.01, which fails to allege at least one specific, substantial, overt act in furtherance of the conspiracy, is fatally defective for such failure." *Childs*, 88 Ohio St.3d 194, 197, 724 N.E.2d 781. The court observed that one purpose of an indictment is that it "compels the government to aver all material facts constituting the essential elements of an offense, thus affording the accused adequate notice and an opportunity to defend." *Id.* at 198. However, the court explained that "[g]enerally, the requirements of an indictment may be met by reciting the language of the criminal statute." *Id.* at 199. The court found an exception for a R.C. 2923.01 conspiracy indictment because subsection (B) of the statute provided that no person shall be convicted of conspiracy unless a substantial overt act was "alleged and proved." *Id.* at 199. Thus, "an indictment for conspiracy requires more than a mere recitation of the exact wording of the statute defining the offense of conspiracy." *Id.* And "[t]he state's failure to allege a specific, substantial, overt act committed in furtherance of the conspiracy" rendered the conspiracy indictment "fatally defective," *id.*, even though the defendant received a bill of particulars which "set forth the nature of the charges * * * and the specific conduct constituting the crimes with which he was charged," *id.* at 198.

{¶24} *Troisi* considered "what constitutes adequate notice to inform a wholesale distributor of the charges brought against it under Ohio's drug-trafficking laws." 169 Ohio St.3d 514, 2022-Ohio-3582, 206 N.E.3d 695, ¶ 1. The court explained that "[w]holesale distributors are protected from prosecution from drug trafficking as long as they comply with the requirements of several chapters of the Revised Code, including R.C. Chapter 4729." *Id.* The court also explained that it is generally sufficient if the indictment tracks

the language of the charged offense and identifies a predicate offense by referring to its statute number. *Id.* at ¶ 24. The indictment let the appellants "know the drug-trafficking laws they were accused of violating * * * but it did not inform them of what they had done to render themselves noncompliant with R.C. Chapter 4729," which was "an element that is essential for the state to prove." *Id.* at ¶ 27. And while "the omission of an underlying offense in an indictment may be remedied by identifying the underlying offense in the bill of particulars," "[n]either the bill of particulars nor the limited amount of discovery provided information about which provision of R.C. Chapter 4729 appellants failed to act in accordance with." *Id.* at ¶ 33. Thus, the court held that the state failed to identify the nature and cause of the accusation against the appellants, and the indictment had to be dismissed without prejudice. *Id.* at ¶ 44.

{¶25} *Childs* and *Troisi* are inapposite. Contrary to what Webb asserts, neither case held that an indictment and bills of particulars "must allege specific facts that support each element of an offense in order to place the defendant on notice of the nature of the charges against him." And neither case supports the proposition that the bill of particulars here is deficient because it did not specify what evidence the state believed showed Webb had the requisite knowledge for the tampering charge.

{¶26} For the foregoing reasons, we conclude the trial court did not err when it denied the motion for a more specific bill of particulars even though the state did not set forth how Webb was supposedly aware that an official proceeding or investigation was likely or underway at the time of the alleged tampering. To the extent Webb argues that the court also erred in denying his motion because the bill of particulars did not contain specific facts establishing "how he supposedly disposed of, hid, or discarded the iPad" or

"his purpose for impairing its use at trial," the arguments are beyond the scope of the first assignment of error, so we need not address them. *State v. Trego*, 4th Dist. Ross No. 22CA18, 2023-Ohio-1114, ¶ 42, citing *State v. Nguyen*, 4th Dist. Athens No. 14CA42, 2015-Ohio-4414, ¶ 41. We overrule the first assignment of error.

## IV.  METADATA

**{¶27}** In his second assignment of error, Webb contends that the trial court erred when it allowed the state "to introduce metadata that was produced the morning of trial and without an expert report as required by Ohio R. Crim. P. 16(K)."

### A.  Exclusion of Metadata as a Discovery Violation Sanction

**{¶28}** Webb essentially contends that the trial court erred by not excluding the metadata as a sanction for the state violating Crim.R. 16 by not providing the metadata earlier. Webb asserts that "there can be no excuse for the prosecution's failure to provide the information until minutes before trial." He maintains that the state "indicated that it had been in possession of" the metadata "for quite some time," so "the only conclusion to be drawn is that the failure to produce the same in discovery was a willful violation of Rule 16." He asserts that the metadata "would have benefitted [him] in the preparation of his defense and he did not have an opportunity to review the material or obtain an expert opinion prior to trial." He asserts that he "suffered prejudice because he did not have the benefit of preparing to, at a minimum, rebut the evidence." He claims the state "should not have been permitted to introduce the metadata as evidence," so "a new trial is warranted."

**{¶29}** Crim.R. 16 governs discovery in criminal cases. The purpose of the rule "is to provide all parties in a criminal case with the information necessary for a full and fair

adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A).  Crim.R. 16(L)(1) provides:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule * * *, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

**{¶30}**  "Courts have broad discretion over discovery matters, including motions for sanctions."  *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 27.  " 'A reviewing court shall review these rulings only for an abuse of discretion.' "  *Id.*, quoting *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 662 N.E.2d 1 (1996), syllabus.  "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."  *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶31}**  The " 'trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery.' "  *Id.* at ¶ 42, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), at paragraph two of the syllabus.  The Supreme Court of Ohio has "established three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution."  *Id.* at ¶ 35.  They are "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced."  *Id.*

{¶32} The state does not appear to dispute the contention that it committed a discovery violation by not providing Webb with the metadata until the morning of trial. Instead, the state incorrectly relies on *State v. Crum*, 4th Dist. Lawrence No. 07CA3, 2007-Ohio-4924, for the position that Webb waived his ability to raise the issue on appeal by not requesting a continuance. In *Crum*, the appellant asserted that "the trial court denied his due process rights and right to a fair trial when it failed to provide him with enough time to obtain a fingerprint expert to analyze [the state's] evidence supporting the charges against him." *Crum* at ¶ 3. We explained that the appellant "made no motion for a continuance to allow him to obtain an independent analysis of the fingerprint evidence, thus waiving his ability to assert the same as error in future proceedings." *Id.* at ¶ 15. In this case, though Webb complains that he did not have time to review the metadata or obtain an expert opinion before trial, he does not assert that the court erred by not giving him more time. Rather, he asserts that the court erred by allowing the state to introduce the metadata as evidence. He preserved this issue for appeal. Defense counsel requested exclusion as a sanction before trial and objected to the metadata during trial on the ground that it was untimely provided.

{¶33} Nonetheless, Webb has not demonstrated that the trial court abused its discretion by refusing to exclude the metadata from evidence. Even if there was a willful discovery violation as Webb contends, there is no evidence that foreknowledge of the metadata would have benefited Webb in the preparation of his defense. The metadata is not exculpatory, and while foreknowledge of the metadata would have afforded Webb more time to review it before trial and obtain an expert opinion, it is speculative to conclude that this would have somehow benefitted Webb in preparing his defense.

**{¶34}** There is also no evidence Webb was prejudiced. The metadata at issue consists of a small amount of information, and Chaffins did not testify about the metadata until the second day of trial. Defense counsel did not request a continuance to prepare to cross-examine Chaffins and instead sought the "harshest sanction available"—the exclusion of the metadata. *State v. Dillard,* 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 19. Thus, " 'the trial court may have properly determined that appellant was prepared to proceed despite any claim of unfair "surprise." ' " *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 119, quoting *State v. Bidinost*, 71 Ohio St.3d 449, 457, 644 N.E.2d 318 (1994). Under these circumstances, the decision to not exclude the metadata from evidence as a discovery violation sanction was not unreasonable, unconscionable, or arbitrary.

### B. Admissibility of the Metadata

**{¶35}** Next, Webb contends that the trial court should have excluded the metadata because it requires expert testimony to be admissible. Webb asserts that the state proffered the metadata "to corroborate the alleged victim's story about when the photographs were taken." He asserts that metadata "is not readily apparent from the face of an electronic document." And he maintains that "digital evidence contained within photographs is not self-authenticating under the Ohio Rules of Evidence," that "[t]he authenticity of digital evidence requires expert testimony because it is not within the knowledge of a layman," and that metadata "requires expert testimony to be understood by lay persons, as it is beyond common knowledge or experience." He asserts that because the metadata "requires expert testimony to be properly understood, it was a violation of" Crim.R. 16(K) "to introduce said evidence without an expert report." And he

claims that because the metadata should have been excluded, he "should be afforded a new trial."

**{¶36}** " 'The admission or exclusion of evidence generally rests within a trial court's sound discretion.' " *State v. Allen*, 4th Dist. Ross No. 21CA3736, 2022-Ohio-1180, ¶ 21, quoting *State v. McCoy*, 4th Dist. Pickaway No. 19CA1, 2020-Ohio-1083, ¶ 20. " 'Thus, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence.' " *Id.*, quoting *McCoy* at ¶ 20.

**{¶37}** The trial court did not abuse its discretion when it allowed the state to introduce the metadata without expert testimony or an expert report. "Expert-opinion evidence is not required or necessary where the subject of the inquiry is within the common, ordinary and general experience and knowledge of mankind, but such evidence is required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592 (1964), paragraph one of the syllabus. Chaffins' testimony about the metadata was well within the comprehension of laypersons and only requires common, ordinary, and general experience and knowledge to understand. Although the metadata was not immediately visible on the photos H.B. took, acquisition of the information did not require any special skill. Chaffins merely transferred the photos to his phone and scrolled up on his phone screen when the photos H.B. took were on it. A layperson could understand, without expert help, that the information which appeared includes the date, time, and order in which the photos were taken.

**{¶38}** The suggestion that the state failed to properly authenticate the photos including the metadata is not well-taken. "The requirement of authentication or

identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). One way this can be accomplished is with "[t]estimony that a matter is what it is claimed to be." Evid.R. 901(B). Chaffins effectively testified that the photos were what the state claimed they were—the photos and accompanying metadata H.B. gave him.

### C. Conclusion

**{¶39}** For the foregoing reasons, we conclude the trial court did not err when it allowed the state to introduce the metadata and overrule the second assignment of error.

### V. CRIM.R. 29 MOTION AND MANIFEST WEIGHT OF THE EVIDENCE

**{¶40}** In his third assignment of error, Webb contends the trial court erred when it did not grant his Crim.R. 29 motion for judgment of acquittal on the tampering with evidence charge and that his tampering conviction is against the manifest weight of the evidence. Webb maintains that the state did not introduce evidence that he "had actual knowledge of a pending or likely investigation." He claims the state "merely suggested during argument, without any supporting testimony," that he "saw a recording on his iPad that showed the alleged victim taking a picture of the iPad." He asserts that "[t]his conclusion is not supported by the alleged victim's testimony" and that she "testified that she told a teacher later that day on February 22, 2022 about [him] supposedly recording her, not that the supposed recording captured her taking a photograph." He claims there is no evidence he "was aware that a complaint had been made against him until almost twenty-four (24) hours after [he] lost the iPad." Webb also claims there is no evidence of "how he supposedly disposed of, hid, or discarded the iPad beyond leaving the school grounds with the iPad" or that he "possessed a purpose for impairing its use at trial." He

asserts the state only established he "left the school grounds with the iPad on February 22, 2022."

## A.  Standards of Review

### 1.  Crim.R. 29 Motion

{¶41}  Crim.R. 29(A) states:  "The court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."  Crim.R. 29(C) states:  "If a jury returns a verdict of guilty * * *, a motion for judgment of acquittal may be * * * renewed * * *."

{¶42}  "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.  In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶43}  "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness."  *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13.  "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*,

577 U.S. 237, 243, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319. A

reviewing court will not overturn a conviction based on insufficient evidence " 'unless

reasonable minds could not reach the conclusion that the trier of fact did.' " *State v. Cook*,

4th Dist. Gallia No. 18CA11, 2019-Ohio-4745, ¶ 15, quoting *State v. Bradshaw*, 4th Dist.

Scioto No. 17CA3803, 2018-Ohio-1105, ¶ 15.

### 2. Manifest Weight of the Evidence

{¶44} In determining whether a conviction is against the manifest weight of the

evidence, an appellate court

> must review the entire record, weigh the evidence and all reasonable
> inferences, consider the credibility of witnesses, and determine whether, in
> resolving conflicts in the evidence, the trier of fact clearly lost its way and
> created such a manifest miscarriage of justice that reversal of the conviction
> is necessary. In order to satisfy this test, the state must introduce
> substantial evidence on all the elements of an offense, so that the jury can
> find guilt beyond a reasonable doubt.
>
> Although a court of appeals may determine that a judgment of a trial court
> is sustained by sufficient evidence, that court may nevertheless conclude
> that the judgment is against the weight of the evidence. However, we are
> reminded that generally, it is the role of the jury to determine the weight and
> credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe
> all, part or none of the testimony of any witness who appears before it.' "
> *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338,
> ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-
> 1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and
> credibility issues because it is in the best position to gauge the witnesses'
> demeanor, gestures, and voice inflections, and to use these observations
> to weigh their credibility.

(Citations omitted.) *Anderson* at ¶ 14-15.

### B. Elements of Tampering with Evidence

{¶45} R.C. 2921.12(A)(1) states: "No person, knowing that an official proceeding

or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter,

destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 11.

**{¶46}** R.C. 2901.22(B) states:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶47}** "Notably, this definition does not encompass knowledge that a reasonably diligent person should, but does not, have. Rather, the statute requires the accused to be *aware* that conduct will probably cause a certain result or will probably be of a certain nature or that circumstances probably exist." (Emphasis sic.) *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 24. "[C]onstructive knowledge is insufficient to prove that [an accused] knew that an investigation was ongoing or likely to be commenced * * *." *Id.* at ¶ 25. *Barry* explained that "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense, and therefore, the fact that an act was unmistakably a crime does not, by itself, establish that the accused knew of an investigation into that crime or that such an investigation was likely to be instituted." *Id.* at ¶ 2. However, "*Barry* does not foreclose

the possibly that knowledge of a likely investigation may be inferred when the defendant commits a crime that *is* likely to be reported." (Emphasis sic.)  *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 118.  "The likelihood of an investigation is measured at the time of the alleged tampering."  *Id.* at ¶ 110.

**{¶48}**  "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).  " 'The intent of an accused person dwells in [that person's] mind' " and " 'can never be proved by the direct testimony of a third person.' "  *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus.  " 'It must be gathered from the surrounding facts and circumstances under proper instructions from the court.' "  *Id.*, quoting *Huffman* at paragraph four of the syllabus.

## C.  Analysis

**{¶49}**  After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of tampering with evidence proven beyond a reasonable doubt.  With respect to the alter, destroy, conceal, or remove element, the state presented ample evidence that Webb at the very least removed the iPad, i.e., changed the location of it.  *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/remove  (accessed  November  1,  2023) ("remove" means, inter alia, "to change the location, position, station, or residence of").

There is evidence, including Webb's own written statement, that on February 22, 2022, Webb removed the iPad from the school.

**{¶50}** The state also presented evidence that Webb knew an official investigation was likely to be instituted when he removed the iPad from the school and that he removed the iPad with purpose to impair its value or availability as evidence in that investigation. There is evidence that the morning of February 22, 2022, Webb used the iPad to try to record H.B. changing in his office. Shortly before gym class ended, Webb entered the hallway where his office was located. A little over five minutes later, H.B. entered the same hallway and went to Webb's office, where he made her change before and after class. Once inside Webb's office, H.B. discovered that the iPad had been recording for five minutes and 58 seconds. She took a photo of where the device was positioned on the floor, with the back of the iPad facing into the office. She tilted the iPad and took a photo of the screen, which showed the recording time. In this photo, the back of the iPad is facing the carpeting, and the carpeting is visible on the iPad screen, meaning the iPad was recording from the back. Based on these photos, one could reasonably infer that the iPad recorded H.B. photographing it before she turned it off. There is also evidence that Webb had access to the iPad after this occurred and had ample time to review the footage before he removed the iPad from the school, and its whereabouts became unknown.

**{¶51}** The jury did not have to believe that it was merely a coincidence that the iPad went missing the same day H.B. photographed it recording her while she was supposed to be changing in Webb's office, at his direction. The jury could reasonably conclude that before Webb removed the iPad from the school, he watched the recording because he wanted to see H.B. in a state of undress, instead saw her collecting evidence

of his wrongdoing, and thus knew that she was likely to report him and that an official investigation was likely to be instituted. The jury also could reasonably conclude that after watching the recording, Webb concocted a plan to claim he lost the iPad in order to prevent investigators from obtaining the recording, intentionally placed the device on his truck bed cover in view of a school security camera to corroborate his story, and weighed down the box on top of the iPad before driving off to ensure the device did not actually fall off the truck, as he alluded it did, before he was ready to dispose of it. And because there is sufficient evidence to support Webb's conviction for tampering with evidence, the trial court did not err when it denied Webb's Crim.R. 29 motion as to that offense.

{¶52} We also reject Webb's contention that his conviction for tampering with evidence was against the manifest weight of the evidence. After our review of the record, and after we consider the evidence and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. Instead, we believe that the state adduced substantial evidence at trial to prove all the elements of tampering with evidence beyond a reasonable doubt. Accordingly, we overrule the third assignment of error.

## VI.  MOTION FOR NEW TRIAL

{¶53} In the fourth assignment of error, Webb contends that the trial court erred when it did not grant him a new trial "because the production of the metadata the morning of trial and introduction of the metadata as evidence was an abuse of discretion." Crim.R. 33(A) states:  "A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:  (1) * * * abuse of

discretion by the court, because of which the defendant was prevented from having a fair trial * * *." "Generally, a trial court's denial of a motion for new trial under Crim.R. 33 is reviewed for an abuse of discretion." *State v. Inman*, 4th Dist. Hocking No. 12CA16, 2013-Ohio-3351, ¶ 36.

{¶54} Webb maintains that he "was prevented from having a fair trial twice. First, when he was forced to go to trial [in] thirteen (13) days in Case No. 22-CR-373. And second, when the [s]tate produced an update to discovery *after* trial was scheduled to commence, the update to discovery required expert testimony to be admissible, and the Court denied [his] motion *in limine* and allowed the introduction of the evidence over objection." Webb did not raise the first issue in his motion for a new trial, and the issue is beyond the scope of the fourth assignment of error, so we need not address it. *Trego*, 4th Dist. Ross No. 22CA18, 2023-Ohio-1114, ¶ 42, citing *Nguyen*, 4th Dist. Athens No. 14CA42, 2015-Ohio-4414, at ¶ 41. Moreover, in our discussion of the second assignment of error, we concluded that the trial court did not abuse its discretion when it allowed the state to introduce the metadata at trial. Therefore, the trial court did not err when denied Webb a new trial based on the introduction of the metadata. We overrule the fourth assignment of error.

## VII. CONCLUSION

{¶55} Having overruled the assignments of error, we affirm the trial court's judgments.

JUDGMENTS AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENTS ARE AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**